UNITED STATES of America

v.

Kenneth COOKE.

Crim. A. No. 94–005.

United States District Court,
E.D. Pennsylvania.

April 7, 1994.

Eileen Shimizu, Philadelphia, PA, for defendant.

Rona Wenik, U.S. Attorney's Office, Philadelphia, PA, for the U.S.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Defendant has been indicted for reentering the United States, without having obtained prior permission of the Attorney General, after having been arrested and deported subsequent to a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). He was ordered deported after a hearing on December 18, 1991. The deportation order was based on a prior misdemeanor conviction for possession of marijuana. On June 24, 1992, defendant pled guilty to the felony of attempted murder and received a suspended sentence of nine years. Defendant departed from the United States pursuant to the order of deportation on December 11, 1992. Defendant has moved to quash the indictment.[1]

The issue is the meaning of "deportation" in the relevant statute. Defendant contends that deportation is the legal act of adjudication ordering an individual to leave the country; under this reading of the term, defendant could not be validly charged under § 1326(b)(2) because his "deportation" would have been before, not after, his felony conviction for attempted murder. Conversely, the Government argues that deportation is the physical departure of an alien who has been ordered to leave the country; thus, defendant's "deportation" is subsequent to his felony conviction for attempted murder, and defendant was properly indicted under § 1326(b)(2).[2]

If the statute is sufficiently ambiguous, the rule of lenity requires resolution of doubt in the defendant's favor. The rule of lenity is based on "'the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should.'" *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971) (quoting Henry J. Friendly, Benchmarks 209 (1967)). It applies in those situations "in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute." *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (quoting *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980); *United States v. Schneider,* 14 F.3d 876, 879 (3d Cir.1994). Although the use of "deportation" in the statute and its legislative history is not entirely unambiguous, consideration of the motivating policies of § 1326 does not leave a reasonable doubt as to the scope of that section; consequently, the court will deny defendant's motion.

8 U.S.C. § 1326 states, in relevant part:

(a) Subject to subsection (b) of this section, any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a

---

1. The court previously denied defendant's Motion to Quash the Indictment insofar as it challenged the indictment's factual specificity; the court took the remainder of the motion under advisement. *See* Order of March 1, 1994.

2. The parties do not dispute that defendant may be charged under 8 U.S.C. § 1326(a) for reentering the United States without obtaining the permission of the Attorney General under either interpretation of "deportation."

place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission. . . .

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—

. . . .

(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both.

 The statute does not define "deportation." Consequently, the court must employ standard rules of statutory construction to determine its meaning. Statutory construction begins with the language of the statute itself; the words used are given their ordinary meaning. *Moskal,* 498 U.S. at 108, 111 S.Ct. at 465; *Government of the Virgin Islands v. Knight,* 989 F.2d 619, 633 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 556, 126 L.Ed.2d 457 (1993). Since the meaning of a word depends on its context, the statute should be read as a whole. *King v. St. Vincent's Hospital,* —— U.S. ——, ——, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991); *Schneider,* 14 F.3d at 879.

Some portions of the statute at issue clearly use "deportation" to refer to departure. Section 1252(c) delineates the procedure to be used when a final order of deportation is made. That section requires the Attorney General to supervise or place in detention any alien who has not been "deported" within six months after the entry of a final order of deportation. Since the statute contemplates that an alien might not have been deported even after the entry of a final order of deportation, "deportation" in that section must refer to the act of leaving the country pursuant to the order rather than the order itself. Section 1252(d) states: "Any alien, against whom a final order of deportation . . . heretofore or hereafter issued has been outstanding for more than six months, shall, pending eventual deportation, be subject to supervision under regulations prescribed by the Attorney General." Like § 1252(c), § 1252(d) differentiates between the "final order of deportation" and a later "eventual deportation" which would be the act of physically leaving the country.

The language of § 1326, at issue here, does not rule out defendant's interpretation as a reasonable reading of the term. Section 1326(a)(2) imposes criminal liability if a deported alien "enters, attempts to enter, or is at any time found in" the United States without previously *obtaining the Attorney General's permission.* While an alien must leave in order to reenter or attempt to reenter the country, an alien need not leave in order to be "found" in the United States. If a deported alien may be found in the United States without leaving the United States, then departure would not be a necessary element of "deportation." The Government has argued that this reading of the statute would subject an alien to prosecution under § 1326 immediately after the alien is ordered deported but before the alien has an opportunity to leave. However, § 1252(c) allows the Attorney General six months after an entry of a final order of deportation to effectuate removal of the alien from the United States; § 1252(c) also allows the Attorney General to release an alien during that time. If deportation referred to the final order of deportation, there would appear to be a grace period before an alien could be prosecuted for being found in the United States under § 1326(a)(2). It is therefore possible to read § 1326 as using "deportation" in the manner urged by defendant.

Nevertheless, allowing a prosecution under this section for being found in the United States without leaving the United States would conflict with the title of the section itself: the section governs "*Reentry* of deported alien; criminal penalties for *reentry* of certain deported aliens." (emphasis supplied). Furthermore, § 1252(e) sets out a penalty for willful failure to depart within six months from the date of the final order of deportation; it would be possible but unlikely for an alien to be subject to prosecution under § 1252(e) for willful failure to depart and also under § 1326 for being "found" in

the United States after the issuance of the final order of deportation.

Another section of the statute supports defendant's interpretation. Section 1254 gives the Attorney General the authority to "suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence" under certain circumstances. This section apparently uses "deportation" to refer to the order of deportation, for it is the order which is being suspended. It is difficult to read "deportation" in this section as the act of leaving the country because one would not suspend a non-existent event. An alien who has been ordered deported is presumably still in the country when applying to the Attorney General for "suspension of deportation" under § 1254.

8 U.S.C. § 1101(g) states that "any alien ordered deported ... who has left the United States, shall be considered to have been deported in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed." The Government argues that this section contemplates a two-part test for determining when a person has been deported: (1) the person has been ordered deported; and (2) the person has left the United States. According to the Government, much of § 1101(g) would be superfluous if "deportation" meant the order of deportation. The Government's argument is persuasive, but not dispositive; one can also read this section as clarifying that the order deports a person regardless of the means by which the person happens to leave the country. While perhaps not as natural a reading as the Government's interpretation of "deportation" in this section, defendant's proposed interpretation is not entirely implausible.

Dictionary definitions of deportation do not rule out defendant's proposed meaning of the term. One dictionary defines "deport" as "to carry or send away; specif., to force (an alien) to leave a country by official order; expel." 370 Webster's New World Dictionary (3d College Ed.1988). Black's Law Dictionary defines "deportation" as "[b]anishment to a foreign country" and "[t]he transfer of an alien, excluded or expelled, to a foreign country." While some of the terms, such as "to leave" and "transfer" refer to physical departure, "forcing" an alien to leave and "banishment" could refer to the legal proceeding rather than the physical departure of an alien.

In *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the Supreme Court used "deportation" to refer to the act of leaving the country as opposed to the order of deportation. *See id.* at 830, 107 S.Ct. at 2150 (stating that defendants were ordered deported at a hearing, and then were subsequently deported from El Paso, Texas). The issue in that case was whether an alien prosecuted for illegal entry following deportation could collaterally attack the underlying deportation order; because the meaning of "deportation" was not at issue, the Court's use of the word "deportation" in that decision is of limited assistance, although it does support the Government's interpretation of the term.[3]

The use of "deportation" in the legislative history mirrors the use of the term in the statute itself. In general, the House Report differentiates between an order of deportation and "effective" deportation occurring subsequent to the order. *See* H.R.Rep. No. 1365, 82d Cong., 2d Sess. 58 (1952) ("[A]fter a final order of deportation, the Attorney General shall have a period of 6 months from

---

**3.** The Government also relies on the United States Sentencing Guidelines. An increase in offense level is required if a defendant who unlawfully remains in or reenters the United States "previously was deported after a conviction" for a felony or aggravated felony. U.S.S.G. § 2L1.2(b). Application Note 6 states that "Deported after a conviction ... means that the deportation was subsequent to the conviction, whether or not the deportation was in response to such conviction." This language clearly states that the deportation need only occur after the

commission of a felony in order to apply the increase in offense level, but it sheds no light on whether "deportation" refers to the order to leave the country or the act of leaving the country. The cases applying the Guideline are not applicable to the issue before the court. *See United States v. Adeleke*, 968 F.2d 1159, 1160 (11th Cir.1992) (applying Guideline § 2L1.2); *U.S. v. Brito–Acosta*, 963 F.2d 1284, 1285 (9th Cir.1992) (same). The court also doubts that the language of a sentencing guideline controls the interpretation of the applicable criminal statute.

the date of such order within which to effectuate the deportation of the alien"); *id.* at 64 (referring to detention expenses "pending [an alien's] deportation after he has been ordered to be excluded and deported"). Yet the House Report has the same ambiguity as the statute in discussing "suspension of deportation" by the Attorney General. *See id.* at 61–62. The House Report could have referred to the "order of deportation" if deportation meant leaving the country rather than the legal order to leave the country, but it does not do so; this might lead to an inference that "deportation" refers to the order to leave the country rather than the act of leaving.

■ The language of the statute and its legislative history are not entirely consistent in their use of the term "deportation," but the policy of the statute eliminates any remaining ambiguity. The clear purpose of § 1326 is to deter aliens who have been forced to leave the United States from reentering the United States without prior consent of the Attorney General, and to provide for varied maximum terms of imprisonment for undeterred aliens depending on the convictions prior to deportation. An alien who committed a felony may be imprisoned for a longer term on illegally reentry than an alien who has not committed a felony, and an alien who has committed an aggravated felony may be imprisoned for a longer term than one who has committed a non-aggravated felony. The increased deterrent to reentry imposed on an alien who commits a felony while in the United States should apply whether the alien commits the felony prior to the order of deportation or subsequent to the order but before leaving the country; the undesirability of the alien's illegal reentry to the United States is the same in either case. Despite the occasionally inconsistent use of the term "deportation" in the statute and its legislative history, the policy of § 1326 leaves little doubt that the term "deportation" as used in that section must refer to the act of leaving the country rather than the order to leave the country.

Because the language, legislative history, and motivating policies of the statute do not leave the court with a reasonable doubt as to the meaning of "deportation" used in 8 U.S.C. § 1326, defendant's Motion to Quash the Indictment will be denied. An appropriate order follows.

### ORDER

AND NOW, this 7th day of April, 1994, in consideration of defendant's Motion to Quash the Indictment, the Government's response, and after a hearing on March 9, 1994, it is **ORDERED** that the motion is DENIED. Trial of this action shall commence on **April 11, 1994 at 10:00 a.m.**