[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 4, 2006
THOMAS  K. KAHN
CLERK

_____

No. 04-13148

_____

D. C. Docket No. 03-00257-CR-J-20-TEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBINSON WILLIAM RODRIGUEZ
a.k.a. Robinson Rodriguez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 4, 2006)**

Before TJOFLAT and KRAVITCH, Circuit Judges, and LAWSON[*], District
Judge.

---

[*] Honorable Hugh Lawson, United States District Judge for the Middle District of
Georgia, sitting by designation.

KRAVITCH: Circuit Judge:

Defendant-Appellant Robinson William Rodriguez appeals his conviction

and sentence for being found in the United States after deportation, in violation of

8 U.S.C. § 1326. On appeal, Rodriguez raises five issues: (1) whether the district

court properly denied his motion to dismiss the indictment because his prior

deportation was invalid; (2) whether the district court properly denied the motion

to suppress his statement because he was not advised of his rights under the Vienna

Convention on Consular Relations ("VCCR")[1]; (3) whether the court abused its

discretion by denying him the opportunity to raise a necessity or duress defense

based on his fear that he would be killed if returned to Colombia; (4) whether the

court committed plain error by applying an extra-verdict enhancement for

obstruction of justice and by sentencing him under a mandatory guidelines scheme,

in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621

(2005); and (5) whether the enhancement for obstruction of justice was warranted

under the facts of the case. After oral argument and a thorough review of the

record, we affirm.

I. Background

Rodriguez, a Colombian citizen, was convicted of aggravated robbery in

---

[1] Vienna Convention on Consular Relations, art. 36, Dec. 14, 1969, 21 U.S.T. 77, T.I.A.S. 6820.

Texas in 1999, and deported after his release from prison. He later stowed away on a ship originating in Venezuela and traveling to Florida. After customs inspectors found Rodriguez on board the ship, he was indicted for a violation of § 1326. At his initial detention hearing, Rodriguez identified himself as Robinson Vente Viveros. Rodriguez subsequently appeared before a magistrate judge, identified himself as Robinson William Rodriguez, and entered a plea of not guilty.

Rodriguez filed numerous pretrial motions, in which he, inter alia, sought to suppress statements and dismiss his indictment. In support of his motion to suppress, Rodriguez claimed that when he was arrested after being found on the ship, border patrol officers failed to notify the Colombian consulate and inform him of his rights under the VCCR.[2] With respect to his motion to dismiss the

---

[2] Under article 36 of the VCCR,

if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph; consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.

Article 36, section 1(b)-(c).

3

indictment, he challenged his prior deportation as having violated due process. Although he admitted that he had been convicted of aggravated robbery in Texas, he asserted that the government had not followed proper procedures for expedited removal of aggravated felons because he was not given a notice of intent, was not advised of his rights to challenge his deportation or seek review of the order, and never appeared before an immigration judge. He asserted that he would have requested asylum or withholding of removal had he been informed of his rights. Additionally, he claimed that he feared that he would be killed by paramilitaries if he were to be returned to Colombia. Rodriguez indicated, however, that after his deportation, he had escaped Colombia to Venezuela, where he spent 13 months before re-entering the United States.

At a hearing on the pre-trial motions, Rodriguez identified himself as Vente Viveros Robinson, a name he later admitted was false. The court heard evidence from the border patrol agent who processed Rodriguez that Rodriguez was given his rights and declined to contact the consulate. According to the agent, every alien is informed of his rights under the VCCR and the contact numbers of the various consulates were posted by the phone. The court also heard testimony from an immigration and customs agent that Rodriguez was given proper notice before his deportation, and was informed that he must request permission before being

4

allowed to re-enter the United States. Accordingly, the court denied the motions to dismiss the indictment and suppress the statements.

Before trial, the court granted the government's motion to prevent Rodriguez from arguing a necessity or duress defense to explain his re-entry. Rodriguez sought to offer testimony that he re-entered the United States because he feared death should he remain in Colombia. The jury convicted Rodriguez.

In the presentence investigation report ("PSI"), the probation officer assigned a base offense level of 26 with a two-level enhancement for obstruction of justice because Rodriguez gave false names before the court. With a criminal history category III, the corresponding guidelines range was 78 to 97 months imprisonment. Rodriguez objected to the obstruction-of-justice enhancement, but the court overruled the objection and sentenced Rodriguez to 78 months imprisonment. Rodriguez now appeals.

II. The Appeal

    A. Motion to Dismiss

Rodriguez's arguments center on whether his prior deportation was unlawful because the proceedings were fundamentally unfair and he suffered prejudice as a result.

Dismissal of an indictment under § 1326 is proper if the alien defendant

mounts a successful collateral attack on his prior deportation. United States v. Zelaya, 293 F.3d 1294, 1297 (11th Cir. 2002); see also 8 U.S.C. § 1326(d). To make such a showing, the defendant must prove that "(1) he exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceeding at which the order was issued improperly deprived him of an opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." Zelaya, 293 F.3d at 1298. To establish that the proceeding was fundamentally unfair, the defendant must show that "specific errors prejudiced" him. Id.

Here, Rodriguez cannot meet his burden. First, the district court found that Rodriguez's testimony was not credible. This court gives great deference to credibility determinations. United States v. Gregg, 179 F.3d 1312, 1316 (11th Cir. 1999). The district court credited testimony that Rodriguez had been advised of his rights, the charges against him, the reasons for his deportation, and his right to contest the order, but that Rodriguez refused to sign any acknowledgment of his rights. Thus, Rodriguez cannot meet the first two standards for his collateral attack.

Moreover, he cannot show that the proceeding was fundamentally unfair, as he does not identify any error that would have prevented his deportation or that

6

prejudiced him. Notably, Rodriguez would not have been eligible for asylum or withholding of removal given his conviction for an aggravated felony. 8 U.S.C. § 1158(b)(2)(A)(ii), (B)(i). Accordingly, because Rodriguez cannot meet his burden, the district court properly denied the motion to dismiss the indictment.

B. Motion to Suppress

Rodriguez next asserts that his statement should have been suppressed because he was not advised of his rights under the VCCR. Although he admits that he was told of his right to contact the consulate, he contends that the VCCR requires that the consulate be informed that the phone call pertains to the arrest or detention of one of its citizens.

Article 36 of the Vienna Convention on Consular Relations requires that local authorities inform detained or arrested foreigners of the right to contact their consulate for assistance. See United States v. Duarte-Acero, 296 F.3d 1277, 1281 (11th Cir. 2002).

Here, the evidence established that Rodriguez was informed of his right to contact the Colombian consular, but that he declined to do so. We can find no case law supporting his claim that authorities were required to take additional steps after Rodriguez declined to exercise his right.

Nevertheless, even if authorities failed to notify Rodriguez of his rights

under the VCCR, the proper remedy is not to suppress the statements. The Vienna Convention does not confer judicially enforceable <u>individual rights</u>.[3] <u>Duarte-Acero</u>, 296 F.3d 1281. As this court explained in <u>Duarte-Acero</u>, the preamble of the Convention itself "disclaims any intent to create individual rights, stating that its purpose 'is not to benefit individuals but to ensure the efficient performance of functions by consular posts.'" <u>Id.</u> at 1281-82 (quoting the Preamble to the Vienna Convention). Moreover, the State Department has expressed the view "that the only remedies for a violation of the Vienna Convention are diplomatic, political, or derived from international law."[4] <u>Id.</u> Accordingly, the district court properly denied the motion to suppress on these grounds.

C. Necessity and Duress Defenses

Rodriguez also argues that the court abused its discretion by denying him the opportunity to raise a necessity or duress defense based on his fear that he would be killed if returned to Colombia.

---

[3] We note that the U.S. Supreme Court has granted certiorari in a case addressing whether the Convention creates enforceable individual rights and whether suppression is the proper remedy for violations. <u>Sanchez-Llamas v. Oregon</u>, 108 P.3d 573 (Ore.), <u>cert. granted</u>, No. 05-51 (Nov. 7, 2005). In the present case, however, we conclude that the authorities properly advised Rodriguez of his rights under the Convention, but that Rodriguez did not invoke his rights. Therefore, the Supreme Court's subsequent decision will not alter our analysis.

[4] The State Department's interpretation of the treaty is entitled to deference. <u>See</u> <u>El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng</u>, 525 U.S. 155, 168, 119 S. Ct. 662, 671, 142 L. Ed. 2d 576 (1999). <u>See also</u> <u>Maharja v. Sec. Dep't of Corrs.</u>, 04-14669, manuscript op. at 23-25 (11th Cir. Dec. 15, 2005) (discussing available remedy under the Convention).

To establish a duress defense, "a defendant must show that he acted under an immediate threat of death or serious bodily injury, that he had a well-grounded fear that the threat would be carried out, and that he had no reasonable opportunity to escape or inform [the] police." United States v. Wattleton, 296 F.3d 1184, 1196 n.20 (11th Cir. 2002). The "requirement of immediacy of the threat is a rigorous one in which fear of future bodily harm to one's self or to others will not suffice." Id. (internal citations omitted).

Here, the district court properly determined that the duress defense was inapplicable. Rodriguez testified that he had been living in Venezuela for over a year when he re-entered the United States. Based on this testimony, the district court concluded that Rodriguez's testimony concerning his fear lacked credibility. Because Rodriguez could not show that he faced an imminent threat, the district court properly granted the government's motion to exclude such testimony.

### D. Booker

Rodriguez submitted his appellate brief before the Supreme Court issued its opinion in Booker. He did, however, raise the issue of whether the application of an enhancement for obstruction of justice based on the district court's factual findings would violate the Sixth Amendment. Because Rodriguez raised this issue for the first time on appeal, review is for plain error. Post-Booker, this court has

9

held that there are two Booker errors: constitutional error, which arises from the application of extra-verdict enhancements, and statutory error, which arises from the mandatory application of the guidelines. United States v. Shelton, 400 F.3d 1325, 1330-32 (11th Cir. 2005).

To establish plain error, Rodriguez must show there is: (1) error; (2) that is plain; (3) that affects his substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, 125 S.Ct. 2935 (2005).

Here, the district court imposed a two-level extra-verdict enhancement for obstruction of justice based on its own factual findings. In addition, the court applied the sentencing guidelines as mandatory. Therefore, Rodriguez's Booker challenge presents an error that is plain. See Rodriguez, 398 F.3d at 1298-99.

The third prong of the plain error test, however, places a high burden on a defendant and requires that Rodriguez show that his sentence would have been different but for the mandatory application of the guidelines and the enhancement. Id. at 1299-1301. Generally, this court looks for some statement of regret by the district court that it was bound to impose the sentence under the guidelines and that it would have sentenced the defendant differently but for the guidelines. See, e.g.,

United States v. Martinez, 407 F.3d 1170 (11th Cir. 2005).

A sentence at the low end of the guidelines, without more, does not meet this third prong of the plain error test. See United States v. Cartwright,413 F.3d 1295 (11th Cir. 2005); United States v. Fields, 408 F.3d 1356 (11th Cir. 2005). Here, there is nothing in the record that shows that the district court would have imposed a lower sentence had it known the guidelines were advisory only.

Moreover, after Booker the court is still required to properly calculate the guidelines range, including any enhancements. United States v. Crawford, 407 F.3d 1174 (11th Cir. 2005). As discussed below, the district court properly applied the enhancement for obstruction of justice, and, therefore, Rodriguez cannot show plain error in his sentence.

### E. Obstruction of Justice

Finally, Rodriguez asserts that giving a false name to the court did not hinder an investigation, and, therefore, the enhancement for obstruction of justice was improper.

Under U.S.S.G. § 3C1.1, a two-level enhancement is appropriate if the defendant "provides materially false information to a judge or magistrate" or "provid[es] a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the

11

instant offense." U.S.S.G. § 3C1.1, comment. (n.4(f), (g)).

The guidelines draw a distinction between false statements made before a judge and those made before a law enforcement officer. Statements made before a judge need only be material and false; they do not have to hinder or obstruct an investigation or prosecution. United States v. Ruff, 79 F.3d 123, 125 (11th Cir. 1996).

Here, Rodriguez admitted that he gave a false name before the court during the evidentiary hearing. As it is not relevant whether the false statement hindered prosecution because Rodriguez made the statement to a judge, the court properly applied the enhancement.

III. Conclusion

For the foregoing reasons, we AFFIRM Rodriguez's conviction and sentence.

TJOFLAT, Circuit Judge, specially concurring:

I concur without reservation in the court's judgment affirming Rodriguez's conviction. I concur in the affirmance of Rodriguez's sentence because, under this circuit's precedent (which the court cites), the district court did not commit plain Booker error when it enhanced Rodriguez's base offense level for obstruction of justice. The court did not commit plain error because Rodriguez has not satisfied the third prong of the plain-error test; that is, he has not cited (from the record of his sentencing hearing) "some statement of regret by the district court that it was bound to impose the sentence under the guidelines and that it would have sentenced [him] differently but for the guidelines." Ante at ___. In United States v. Thompson, I referred to such statement of regret as "magic words," 422 F.3d 1285, 1302 (11th Cir. 2005) (Tjoflat, J. specially concurring), and explained how a district court statement of regret "fosters disrespect for the rule of law." Id. at 1304. Were we not bound to adhere to this test, I would find plain error, vacate Rodriguez's sentence, and remand the case for resentencing in accordance with Booker.