**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 17, 2009

Charles R. Fulbruge III
Clerk

No. 08-30298

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

OLVIN ORLANDO RAMIREZ-CARCAMO

Defendant - Appellant

Appeal from the United States District Court
for Eastern District of Louisiana

Before SMITH and SOUTHWICK, Circuit Judges, and RODRIGUEZ, District Judge.[*]

Leslie H. Southwick, Circuit Judge:

Olivin Orlando Ramirez-Carcamo appeals his conviction for illegal reentry after removal, arguing that the statutory elements for that offense were not met. There was no error, and we AFFIRM.

## I. BACKGROUND

Ramirez-Carcamo, a citizen of Honduras, was apprehended by border patrol agents near Eagle Pass, Texas on September 17, 2005. The agents processed Ramirez-Carcamo but had to release him because they lacked

---

[*] District Judge of the Western District of Texas, sitting by designation.

sufficient detention funds. The agents issued a Notice to Appear, however, which stated that Ramirez-Carcamo had to appear before an immigration judge and show cause as to why he was not subject to removal. No date or time for the appearance was stated. The Notice to Appear indicated the timing would be established later. Ramirez-Carcamo was required to report, in writing or in person, to a deportation officer on October 1, 2005. Further, if he did not appear at his removal hearing after being told of its scheduling, the Notice informed him that an immigration judge could order removal in his absence. Ramirez-Carcamo signed the Notice to Appear after it was translated into Spanish.

The immigration proceedings later were set for January 20, 2006. Ramirez-Carcamo left the country prior to that date and even prior to the date that he was scheduled to report to his deportation officer. He left on a September 28, 2005 flight from Miami, Florida to San Salvador, El Salvador without informing authorities. When Ramirez-Carcamo did not appear at the January 2006 proceedings, the immigration judge entered a removal order *in absentia*. *See* 8 C.F.R. § 1003.26(c).[1]

Ramirez-Carcamo did not remain outside of the United States. On August 13, 2007, he was arrested for multiple traffic violations in Louisiana by the Orleans Parish Sheriff's Patrol. He was then turned over to border patrol agents. Ramirez-Carcamo informed them that he had reentered the United States in August 2006. He was later indicted for being an alien found in the United States after having previously been removed and deported. *See* 8 U.S.C. § 1326.

---

[1] Even when a defendant fails to appear at removal proceedings, for an *in absentia* order to be entered, the government is required to "establish[] by clear, unequivocal, and convincing evidence that the alien is removable" and also "establish[] by clear, unequivocal, and convincing evidence that written notice of the time and place of proceedings and written notice of the consequences of failure to appear were provided . . . ." 8 C.F.R. § 1003.26(c). Ramirez-Carcamo has never disputed the validity of the January 2006 removal order.

Ramirez-Carcamo moved to dismiss the indictment. He argued that one of the statutory elements for the offense was not met and that his exit prior to the entry of the January 2006 removal order constituted a voluntary departure. The district court denied the motion. Ramirez-Carcamo subsequently entered a conditional guilty plea in which he agreed "not to appeal any other issue other than that presented in the pretrial motion to dismiss." The district court sentenced him to time served, and Ramirez-Carcamo timely appealed.

## II. DISCUSSION

The government argues that Ramirez-Carcamo did not present his current objection in the district court. The motion to dismiss argued that he had "never been deported nor removed," and instead his flight from Miami was a "voluntary departure." We agree with the government that leaving in advance of the scheduled proceedings was not a "voluntary departure," a term of immigration art inapplicable here. *See id.* § 1229c. Though he did not properly label his own actions, the motion made the argument – repeated on appeal – as to what was wrong with the grand jury's actions. That argument is that there was not a removal. Thus, the predicate to the illegal act of returning did not exist. The issue has not been waived, and we consider it *de novo. See United States v. Kay*, 513 F.3d 432, 440 (5th Cir. 2007), *cert. denied*, 129 S. Ct. 42 (2008).

Ramirez-Carcamo was indicted under a statute that applies to an alien who "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter" is found in the country. 8 U.S.C. § 1326(a). The argument is that each of the words in the statutory string must be given an independent meaning. The manner in which Ramirez-Carcamo gives them meaning exempts from the statute's coverage his voluntarily leaving on a flight from Miami. A difficulty for our analysis is that the immigration statutes have been the subject of frequent reforms, leaving earlier terminology in their wake

3

that may have lost some precision in meaning. We find it necessary in light of Ramirez-Carcamo's arguments to determine as best as we can what the words "denied admission, excluded, deported, or removed" now mean. To do that, we look first at what the words used to mean.

The statute under which Section 1326 was enacted in 1952 stated this:

Any alien who –

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than 2 years, or by a fine of not more than $1,000, or both.

As can be seen, the first section of the original statute referred only to an alien being "deported," though that could occur either after arrest in this country or after being "excluded." An "exclusion" was a procedure for an alien who had not yet made an "entry,"[2] while "deportation" was the action against an alien who had made an "entry." *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 175 (1993). The second section referred to being denied admission and "removed." Exactly when an alien has been "deported" and how to distinguish that from a "removal" are among the alleged ambiguities.

---

[2] An "entry" is an alien's entering into the territory of the United States, either being inspected by immigration officials or successfully evading inspection, and continuing on without restraint. *See Yang v. Maugans*, 68 F.3d 1540, 1547 (3d Cir. 1995).

We next turn to an examination of the 1988 amendment to the statute supporting this indictment. What we have quoted already became subsection (a). Added was a subsection (b) that provided harsher reentry penalties for aliens who have been deported for committing felonies. There were no new semantic labels for eviction or blocking of entry.

We now look at the next and latest amendment, which occurred in 1996. That year, Congress made what one learned commentator has called "massive changes to the immigration laws." RICHARD D. STEEL, STEEL ON IMMIGRATION LAW § 1:3, at 1-11 (2d ed. 2005). The 1996 Illegal Immigration Reform and Immigrant Responsibility Act "revamped the prior exclusion/deportation dichotomy and procedures, made significant changes to the underlying grounds of what had been called deportation and exclusion, now called removal or inadmissibility," and restricted, among other things, judicial review. *Id.* at 1-12. The Act created one unified procedure that replaced "the old exclusion proceedings for one who had not made an entry into the United States and removal proceedings for one who had entered . . . with or without legal authority." *Id.* § 14:2, at 14-3.

In 1996, Section 1326 was amended to place several words of ejection or blocking of entry into one list:

(a) In general

Subject to subsection (b) of this section, any alien who –

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with

5

respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Subsection (b) contains penalties that are irrelevant in our analysis.

Subsection (a)(1) contains two possible factual predicates for conviction. Guilt must be supported by proof that an alien left the United States after being "denied admission, excluded, deported, or removed," *or* the defendant is required to have left the United States "while an order of exclusion, deportation, or removal is outstanding." *See* 8 U.S.C. § 1326(a). Because the removal proceedings had not yet taken place at the time he left the country, Ramirez-Carcamo focuses on the first predicate.

Ramirez-Carcamo submits that "removal" means the physical act of being transported outside of the United States instead of the issuance of an order of removal. He left before any order of removal was issued and argues he therefore was never "removed" for purposes of Section 1326. He submits that if "removed" means leaving by force of a legal order, then a later portion of the statute – departure "while an order of removal is outstanding" – is superfluous. An important statutory construction principle is "that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted). We must also remember, though, that canons of statutory interpretation are only guides. *Chickasaw Nation v. United States*, 534 U.S. 84, 85 (2001).

On this point, Ramirez-Carcamo cites two cases from other jurisdictions, both based on deportation orders entered before the 1996 amendments to the immigration statutes. In one, a warrant for the defendant's deportation was

issued prior to the defendant's conviction but before he was physically removed from the United States. *United States v. Zelaya*, 293 F.3d 1294, 1298 (11th Cir. 2002). When he was later apprehended in the United States again, the government charged the defendant with illegal reentry under Section 1326(a). *Id*. At trial, a jury convicted the defendant after being instructed that, "for purposes of 8 U.S.C. § 1326(b)(2), deportation was subsequent to a conviction when the alien is physically removed from the United States after the conviction even if the warrant for the deportation was issued before the conviction." *Id*. On appeal, the alien contested the applicability of the enhancement under subsection (b), arguing that the district judge improperly instructed the jury. *Id*. The Eleventh Circuit disagreed and stated that "the most common usage refers to deportation as an act rather than an order directing that act." *Id*.[3]

In the other cited precedent, the district court held that "the term 'deportation' as used in . . . section [1326] must refer to the act of leaving the country rather than the order to leave the country." *United States v. Cooke,* 850 F. Supp. 302, 303 (E.D. Pa. 1994), *aff'd*, 47 F.3d 1162 (3d Cir. 1995) (unpublished table decision). As we discussed above, the statute at that time referred only to an alien who "has been arrested and deported or excluded and deported, and thereafter" enters the country. 8 U.S.C. § 1326 (Supp. 1995). Of importance, then, this pre-1996 version of Section 1326 did not yet reflect the broad reforms that eliminated distinctions in the nature of deportation.

Also of importance is that the district court discussed a statute we have not yet reviewed, namely, Section 1101(g). *Cooke*, 850 F. Supp. at 305. We find the later version of that statute, as is discussed below, to be controlling for us.

---

[3] In *Zelaya*, the defendant was originally ordered deported in April 1996, prior to the time the 1996 amendments to 8 U.S.C. § 1326 became effective. 293 F.3d at 1296. Though the defendant was not indicted on the reentry charge until 1999, the court analyzed "deportation" under the pre-1996 version, rather than "removal" under the current version. *Id*. at 1298.

The Eleventh Circuit in *Zelaya* cited *Cooke* in support of its conclusion and did not discuss Section 1101(g). We turn to that statutory subsection now.

The first section of the current immigration statutes contains numerous definitions, including one in Section 1101(g). We interpret it to override the distinction Ramirez-Carcamo is making, that if the order of removal is entered after an alien has physically departed, there has in law been no "removal."

> For the purposes of this chapter any alien ordered deported or removed (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed.

8 U.S.C. § 1101(g). Except for a change we note below, this subsection remained the same since its adoption in 1952. Immigration and Nationality Act, ch. 477, 66 Stat. 163, 173 (1952). We start our review of Section 1101(g) by realizing that when this section was included in the epochal Immigration and Nationality Act of 1952,[4] there may have been a special point being suggested by the closing reference to expenses. The 1952 Act provided that vessel and aircraft owners would pay the return expenses of transportation of certain aliens whom they had carried into the country; other sections required the alien or the government to pay. *Id.* § 237, 66 Stat. at 201; § 242(g), 66 Stat. at 212; § 243, 66 Stat. at 212-14. Some now-unperceived changes made by the 1952 enactment may explain the parenthetical and also the subsection itself. Subsequently, this language has been found relevant to the issue of aliens who depart while a deportation order is pending, but the order is not final for some reason, such as being stayed during an appeal. The Ninth Circuit held that under Section 1101(g), an alien who leaves while his appeal is pending has been "deported," and the appeal is

---

[4] The 1952 Act, even with "some major and minor changes, . . . continues to be the basic immigration statute." STEEL, *supra*, § 1:2, at 1-5.

withdrawn by operation of law. *United States v. Blaize*, 959 F.2d 850, 852 (9th Cir. 1992). Caselaw such as *Blaize* may be one of the justifications for why in 1996 a phrase was added to Section 1326 that would clearly pull within its coverage those aliens who "departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter" reenter.

Whatever the statute originally was doing, a suggestive change was made to this quoted subsection by the "massive" 1996 reforms previously discussed. The phrase "or removed" was added following "deported." 8 U.S.C. 1101(g), hist. & stat. n. (citing Pub. L. No. 104-208, § 308(e)(3)). As we previously noted, the 1996 reforms deleted some of the previous dichotomy in status and procedures that had developed. As one of the amendments, the "removal" concept was added to Section 1101(g). Thereafter, a person who had been ordered either deported or removed, and Ramirez-Carcamo admits he was ordered removed, would be considered to have been "deported or removed in pursuance of law" if he had left the United States.

This interpretation was considered in one of the precedents that Ramirez-Carcamo cites, but the court did not accept it:

> According to the Government, much of § 1101(g) would be superfluous if "deportation" meant the order of deportation. The Government's argument is persuasive, but not dispositive; one can also read this section as clarifying that the order deports a person regardless of the means by which the person happens to leave the country.

*Cooke,* 850 F. Supp. at 305.

Ramirez-Carcamo argues that this provision applies only to aliens who depart after the issuance of a removal order. The *Cooke* interpretation may have been based on that view. However, Section 1101(g) does not state, and, to our ears, does not even suggest that the removal order or the departure must always be first. No matter whether the removal order comes first and the alien then

departs, or, as here, the departure comes first and then removal is ordered *in absentia*, the alien ultimately is outside the country with an enforceable order requiring that he have exited. When both have occurred, the person is "considered to have been . . . removed in pursuance of law." 8 U.S.C. § 1001(g).

In conclusion, we emphasize certain aspects of the chronology. At the time of his capture on September 17, 2005, Ramirez-Carcamo signed a Notice to Appear. The notice warned that the immigration judge could order removal *in absentia* if he did not appear at the removal proceedings. Rather than appear at the proceedings, Ramirez-Carcamo left the country. The threatened order was entered *in absentia*. We conclude, based on our analysis of the statutory language, that aliens do not avoid prosecution under Section 1326 by refusing to comply with their obligation to appear at removal proceedings and instead departing in advance of the removal order. If the removal order is thereafter entered *in absentia*, it has the same effect for prosecutions under Section 1326 as would a departure after the removal order.

Ramirez-Carcamo's conviction is AFFIRMED.