**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 6, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

PROSELITO AMARILDO
ESTRADA-BARRIOS, a/k/a Carlos
Coronado,

Defendant - Appellee.

No. 13-7043
(D.C. No. 6:12-CR-00079-RAW-1)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

---

Defendant-Appellant Estrada-Barrios pleaded guilty to illegal re-entry of a previously removed alien in violation of 8 U.S.C. § 1326(a) & (b). There was no plea agreement. He was sentenced to 33 months' imprisonment and one year of supervised release. He now challenges both components of his sentence.

**I**

Mr. Estrada is from Guatemala. He came to this country illegally around

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2005. In December 2005, he was in the custody of Immigrations and Customs Enforcement (ICE) but was released subject to an order to appear. Mr. Estrada failed to appear, and a removal order was entered *in absentia* in October 2007. Mr. Estrada was actually deported in April 2008.

Mr. Estrada was convicted in state court in Kansas of two counts of aggravated assault. Significantly for purposes of this appeal, the Kansas conviction came after Mr. Estrada had been ordered removed from the United States (October 2007) but before his actual deportation (April 2008). The Kansas court sentenced Mr. Estrada to twelve months' imprisonment, with all but 65 days suspended.

Mr. Estrada returned to the United States within three or four months of his 2008 deportation. About four years after his return, he was arrested for public intoxication in Adair County, Oklahoma, and a routine records check done at that time revealed that he had re-entered this country illegally after having been deported.

**II**

The Presentence Investigation Report (PSR) prepared by the probation office noted that the base offense level set by the Sentencing Guidelines for the offense of unlawful re-entry is eight. The PSR recommended that the offense level be increased sixteen levels under U.S.S.G. § 2L1.2(b)(1)(A)(ii). That provision applies when "the defendant previously was deported, or unlawfully

remained in the United States, after – a conviction for a felony that is . . . a crime of violence . . . ." An application note to this Guidelines section provides a definition of "crime of violence" which specifically lists aggravated assault as such a crime. U.S.S.G. § 2L1.2, cmt. n. 1(B)(iii) (2012).[2]

The district court adopted the recommendation for the sixteen-level increase. After other adjustments not relevant here, the PSR concluded with a recommendation of an offense level of 21. That offense level, combined with Mr. Estrada's criminal history category of II, yielded a recommended Guidelines range of 41 to 51 months of imprisonment. The district judge, however, varied downward from the recommended range to impose a sentence of 33 months' imprisonment. As to supervised release, the PSR merely noted that, by statute, the court could impose a term from one to three years.

Counsel for Mr. Estrada submitted a sentencing memorandum. For purposes of this appeal, we note only that the memorandum argued that the offense level overstated the severity of his prior conviction and that section 5D1.1(c) of the Guidelines recommend no period of supervised release generally in cases where the defendant is an alien who will likely be deported after

_____

[2]As noted, the indictment charged Mr. Estrada with a violation of 8 U.S.C. § 1326(a) & (b). Subsection (b)(2) provides for a much increased maximum penalty of up to 20 years' imprisonment if the alien re-entered this country "whose removal was subsequent to a conviction for commission of an aggravated felony . . . ." The PSR cited this as the statutory maximum for Mr. Estrada. This statutory provision is discussed in the text in Part IV.

conviction. The court imposed a one-year term of supervised release in the sentence.

## III

On appeal, Mr. Estrada challenges both elements of his sentence but does not challenge the underlying conviction that was based on his guilty plea. We begin by referencing the standards applicable to our review:

> This court reviews sentences for reasonableness under a deferential abuse-of-discretion standard. "Reasonableness review is a two-step process comprising a procedural and a substantive component." "Procedural reasonableness involves using the proper method to calculate the sentence." The Supreme Court in *Gall* [*v. United States*, 552 U.S. 38 (2007)] has identified several procedural errors, including "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence--including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.
>
> Substantive reasonableness, on the other hand, involves "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in [§ 3553(a) ]." This court reviews a sentence for substantive reasonableness under the abuse-of-discretion standard, and gives "substantial deference to district courts."

*United States v. Sayad,* 589 F.3d 1110, 1116 (10th Cir. 2009).

Mr. Estrada argues that the district court imposed a sentence that was both procedurally and substantively unreasonable when it ordered the term of supervised release. Mr. Estrada contends that the sentence was procedurally unreasonable because the district court, in his view, misunderstood the applicable

law.  The principle at issue here is this:  "The court ordinarily should *not* impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment."  U.S.S.G. § 5D1.1(c) (emphasis added).  However, an application note for this section provides that the sentencing court should consider imposing a term of supervised release on a defendant who is likely to be deported "if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case."  *Id*., cmt. n.5.

Mr. Estrada argues that comments that the sentencing judge made from the bench reveal that the judge was under the mistaken belief that a period of supervised release was ordinarily to be a part of the sentence for a defendant in the position of Mr. Estrada and that the judge believed that he would have to depart or vary from the Guidelines if he were *not* to order supervised release.  Thus, the judge at one point in the sentencing hearing said that counsel for Mr. Estrada had "filed a sentencing memorandum requesting a non-guideline sentence without the imposition of supervised release."  II R. 54-55.  The judge went on to say that he had decided that a downward variance was appropriate in consideration of the sentencing factors set out in 18 U.S.C. § 3553(a).  He announced his decision to vary downward to an offense level of 17, which resulted in a Guidelines sentencing range of 27 to 33 months of imprisonment.  Immediately following this the judge said, "The Court denies the defendant's

motion for variance regarding the non-imposition of supervised release." II R. 56.

Counsel for Mr. Estrada immediately said that the court "made insufficient findings with regard to the supervised release imposition. That there is not sufficient evidence, nor record to support that finding, or an explanation enough [sic] that the appellate court could decide whether that was the proper decision or not." *Id.* at 57. The judge proceeded to impose sentence after asking counsel some questions about the objection, but without comment on the substance of the objection. After pronouncement of sentence, counsel for the government requested that the court make additional findings.

In response, the judge said that in imposing the term of supervised release of one year, he had "considered, besides the other factors, the defendant's assimilation, his previous reentry, and the other factors cited in defense counsel's argument. In other words, I agree with them mostly, but not enough to dispense with supervised release." *Id.* at 63-64.

Certainly the judge's language was imprecise at best, and it must be conceded that the transcribed comments lend support to Mr. Estrada's contention that the judge misunderstood the presumption against requiring supervised release for aliens who face deportation after having served their terms of confinement. But we consider the judge's impromptu remarks in the total context of the proceedings, and the context dissipates the force of Mr. Estrada's argument. It is

clear that the district judge had paid careful attention to Mr. Estrada's sentencing memorandum as well as counsel's oral argument at the sentencing hearing. Counsel for Mr. Estrada had set out the Guidelines presumption in both.[3]

We note also that counsel for the government had offered specific reasons for imposing supervised release in this case: the facts that Mr. Estrada had returned within only three or four months after his deportation and that he had two sons in Oklahoma both suggested, in the government's view, that he was especially likely to reenter illegally again. We can find no abuse of discretion in the district court's decision that these factors tilted the balance in favor of supervised release. Accordingly, we reject Mr. Estrada's argument that the imposition of supervised release was procedurally unreasonable.

As for the substantive reasonableness of the imposition of supervised release, Mr. Estrada's argument amounts to little more than saying that a reasonable person could have weighed the facts and circumstances and come to a different decision. But Mr. Estrada actually gives us no basis to support the conclusion that the judge abused his discretion in weighing the facts and circumstances as he did.

Accordingly, we affirm the supervised release component of Mr. Estrada's sentence.

_____

[3]Defense counsel cited U.S.S.G. § 5D1.1 in writing, I R. 23, and orally, II R. 44-45. Counsel for the prosecution also cited that provision in a written response to the defense memorandum. I R. 36.

**IV**

Mr. Estrada also contends that the district court erred in sentencing him to 33 months' imprisonment and argues that the statutory maximum for his offense is two years. Because Mr. Estrada admittedly failed to raise this argument in the district court, our review is only for plain error. We will reverse for plain error only when four factors are met:

> [T]he error must (1) be an actual error that was forfeited; (2) be plain or obvious; and (3) affect substantial rights, in other words, in most cases the error must be prejudicial, i.e., it must have affected the outcome of the trial. . . . . Given plain error that affects substantial rights, an appellate court should exercise its discretion and notice such error where it either (a) results in the conviction of one actually innocent, or (b) "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*United States v. Keeling*, 235 F.3d 533, 538 (10th Cir. 2000) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)) (internal citations omitted).

The district court decided that the maximum term of imprisonment authorized by statute for Mr. Estrada's offense was twenty years, not two years as Mr. Estrada now asserts. The two-year maximum which Mr. Estrada contends is applicable applies to the basic offense of illegal reentry by an alien who has previously been removed from the United States. 8 U.S.C. § 1326(a). That same statute, in subsection (b), provides higher maximum penalties for reentry of certain removed aliens. In particular, the district court in this case, following the recommendation of the PSR, found that because Mr. Estrada's prior removal had

been "subsequent to a conviction for commission of an aggravated felony," the twenty-year maximum of 8 U.S.C. § 1326(b)(2) applied. Mr. Estrada's primary argument here is that his prior removal had not been subsequent to his aggravated assault conviction.[4]

This argument is based on the sequence of events outlined *supra*, which we can quickly restate. Mr. Estrada was *ordered* to be removed from the United States in October 2007. His physical removal was in April 2008. His conviction for aggravated assault in Kansas state court occurred in between those two events. Thus, whether Mr. Estrada's prior removal was "subsequent" to the state court aggravated assault conviction depends upon whether he had been "removed" from the United States upon issuance of the order of removal or whether he was only "removed" when he was physically transported out of the country.

Some difference of opinion exists on the proper construction of this rather simple statutory phrase. We conclude only that the district court's error, if any, certainly was not plain or obvious. Because that is all that we must decide to

---

[4]In a footnote, Mr. Estrada says that his prior conviction for aggravated assault was not an aggravated felony for purposes of the statutory enhancement of the maximum penalty. By statute, 8 U.S.C. § 1101(a)(43), an aggravated felony is defined as a crime of violence for which the person was sentenced to at least one year in prison. Another subsection provides that in considering the term of imprisonment ordered, the court is to include the whole, without regard to any suspension of that sentence in whole or in part. 8 U.S.C. § 1101(a)(48)(B). In the instant case, Mr. Estrada was sentenced to one year but with all except 65 days suspended. By plain application of the statutory language, this qualifies as a conviction for an aggravated felony, and Mr. Estrada's passing assertion to the contrary is without merit.

resolve this issue, we offer no opinion on the issue of whether there was error at all. We will only cursorily sketch the outlines of the debate.

Mr. Estrada argues that removal is a term of art in the immigration statutes and that analysis of the way the term is used reveals that it refers to the order of removal rather than to the physical removal of an alien. This view is advanced in a careful analysis by Judge Thomas of the Ninth Circuit, dissenting in *United States v. Luna-Madellaga*, 315 F.3d 1224, 1227-1233 (9th Cir. 2003). Yet to us in this case it matters little that Judge Thomas's analysis is scholarly and thorough: Because our review is only for plain error, the salient fact for us is that it is in fact a dissent. The majority in that case decided, contrary to Mr. Estrada's argument, that analysis under the statute "plainly turns on the alien's *physical* removal – not the *order* of removal." 315 F.3d at 1226 (emphasis in original). Other courts have agreed with the *Luna* majority. *See United States v. Zelaya*, 293 F.3d 1294, 1298 (11th Cir. 2002).

Perhaps Mr. Estrada's position will ultimately carry the day, but for now it is far from clear that the district court's interpretation of the statute is incorrect. Our conclusion is simply that no plain or obvious error occurred here. Accordingly, we affirm the sentence of 33 months' imprisonment.

# V

The judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT


William J. Holloway, Jr.
Circuit Judge