UNITED STATES of America, Plaintiff-Appellee,

v.

Thomas V. GREGG, Defendant-Appellant.

No. 98-2347.

United States Court of Appeals,

Eleventh Circuit.

July 2, 1999.

Appeal from the United States District Court for the Middle District of Florida. (No. 97-339-CR-T-24(E)), Susan C. Bucklew, Judge.

Before HULL and MARCUS, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

Thomas Vance Gregg appeals his conviction and 41-month sentence for bank fraud (18 U.S.C. § 1344); theft of bank funds, (18 U.S.C. § 2113(b)); and money laundering, (18 U.S.C. § 1957). He argues insufficiency of the evidence on (1) the bank fraud conviction and (2) the money laundering conviction; and two sentencing issues: (3) improper enhancement for obstructing justice, and (4) failure to consider his ability to pay in ordering restitution. We affirm on all issues.

The case involved a fire insurance claim settlement check in which Gregg and other parties had an interest and which Gregg converted to his own use. Gregg was the president and sole shareholder of TEY Productions, Inc. ("TEY"). TEY purchased rental property from Mr. and Mrs. Walter J. Germack. The Germacks retained a mortgage interest in the property through a wrap-around mortgage. First Union National Bank held the first mortgage on the property, and DJC Properties held a third mortgage as collateral on an unrelated loan. The Germacks filed a foreclosure suit against TEY and Gregg. While foreclosure proceedings were pending, the property caught fire and sustained considerable damage. TEY's insurance carrier sent a casualty-loss check to Gregg in the amount of $261,000.00 in settlement of TEY's claim made payable to TEY, First Union, the Germacks, DJC Properties, and Tutwiler & Associates, the public adjuster that negotiated the claim on behalf of Gregg. Gregg caused the settlement check to be deposited in TEY's

SunTrust Bank account, with only the endorsements of TEY, First Union, and Tutwiler. Gregg withdrew funds for his own use from the insurance proceeds deposited in the account. The bank suffered a $208,000.00 loss, the amount it had to pay to the Germacks and DJC Properties who had not endorsed the check but who had an interest in the funds from the settlement check. Gregg was charged with bank fraud, theft of bank funds, and money laundering.

*1. Sufficiency of Evidence on Bank Fraud Conviction*

Gregg argues that the government failed to prove that the false representation he made to the bank was "material." A person commits the crime of bank fraud who "knowingly executes, or attempts to execute, a scheme ... to defraud a financial institution ... by means of false or fraudulent pretenses, representations or promises." 18 U.S.C. § 1344.

There is no doubt in the law now that the false representation in a bank fraud case has to be "material." The trial court instructed the jury that the government had to prove that Gregg made a "material" misrepresentation. After the trial in this case, we had held to the contrary in *United States v. Neder,* 136 F.3d 1459 (11th Cir.1998). After this appeal was argued before us, however, the Supreme Court reversed our decision in *Neder* and held that "materiality of falsehood is an element of the ... bank fraud statute[ ]." *United States v. Neder,* (June 10, 1999). Since the jury was properly instructed, the only issue before us is whether there is sufficient evidence to support the jury verdict on this fact.

The evidence, viewed in the light most favorable to the government, shows that the bank manager told Gregg he would need the endorsement of and signature guarantees for every payee before the settlement check could be deposited. Nevertheless, Gregg presented the settlement check without all the requisite endorsements at the bank's drive-through window while the manager was out of the office, and told the teller that the bank manager had approved its deposit. According to the bank manager's testimony, he inspected the check later that day and mistakenly assumed that all endorsements were on the check. Gregg argues that his statement to the teller that the bank manager had approved the check was not material because the teller

2

did not rely on Gregg's false assurances to deposit the check, but that in fact the check was finally deposited to his account only after actual approval by the manager.

Gregg's argument fails for two reasons: *First,* reliance is not necessary to make the false statement material. "In general, a false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decision making body to which it was addressed.'" *Neder,* (quoting *United States v. Gaudin,* 515 U.S. 506, 509, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)). In other words, the statement need not have exerted actual influence, so long as it was intended to do so and had the capacity do so. *See, e.g. United States v. Lopez,* 728 F.2d 1359,1362 (11th Cir.)(discussing whether false statement material under 18 U.S.C. § 1001), *cert denied,* 469 U.S. 828, 105 S.Ct. 112, 83 L.Ed.2d 56 (1984).

*Second,* the evidence would indicate the bank manager at least partially relied on Gregg's representation. The manager testified that he thought the check had all the endorsements, as he had instructed Gregg and as was implicit in Gregg's representation that the manager had approved the deposit, and that he never intended to approve the deposit with two endorsements missing. Because of the number of endorsements on the back of the check and the bank guaranty of endorsements on it, there was some difficulty in discerning exactly which endorsements were there and which were not. The evidence is sufficient to support Gregg's bank fraud conviction.

### 2. Sufficiency of Evidence on Money Laundering Conviction

Gregg was convicted on two counts of money laundering based on the withdrawal from his bank account of the proceeds from the insurance check. Money laundering occurs when one "knowingly engages or attempts to engage in a monetary transaction in criminally derived property." 18 U.S.C. § 1957. The withdrawal of money from a bank account is a "monetary transaction." 18 U.S.C. § 1957(f)(1). The government had to prove, however, that before that withdrawal, the proceeds in that account were "obtained from a criminal offense." 18 U.S.C. § 1957(f)(2). Thus, the bank fraud offense had to be a completed criminal offense when the proceeds went into Gregg's account.

Gregg argues on this appeal that the bank fraud offense was not completed when the proceeds were deposited in his account, but only after withdrawal. Since this withdrawal was an element of the money laundering offense, he argues, the counts merged and there were not separate bank fraud and money laundering crimes committed.

Although there appear to be no cases in this circuit directly on point, we have no trouble in deciding that the bank fraud was a completed crime when Gregg fraudulently obtained the deposit of the proceeds of the check into his account, with the intent at that time to eventually withdraw money from that account for his own use.

There appears to be sparse authority on the point. Although we held in *United States v. Christo,* 129 F.3d 578, 579 (11th Cir.1997) that "money laundering is an offense to be punished separately from an underlying criminal offense," that case involved a single check-kiting scheme. There, the bank-fraud charge and the money-laundering charges were predicated on the same transaction, writing checks on accounts with insufficient funds and causing the bank to pay those checks through the check-kiting scheme.

Here Gregg was in the same position as if he had robbed the bank and placed the proceeds of the robbery into his own account with the intent to use the money for his own purposes. The crime was completed at that point, without any actual withdrawal of the money. As the 4th Circuit in a sentencing issue case held in *United States v. Williams,* 81 F.3d 1321, 1328 (4th Cir.1996):

> Under 18 U.S.C. § 1344, and as he was specifically charged, Williams had completed the offense of bank fraud as soon as he fraudulently obtained credit from Wachovia in the form of a balance in a bank account. *See e.g., United States v. Hord,* 6 F.3d 276, 281 (5th Cir.1993) (bank fraud indictment that charged withdrawals as well as the deposits was multiplicitous since "[i]t is the deposits, not [the] withdrawal attempts, that constitute executions of the scheme"); *United States v. Strozier,* 981 F.2d 281, 286 (7th Cir.1992) ("The defendant completed his defrauding of the [bank] when he set up the two fraudulent accounts; what he did not get around to completing was inflicting on [the bank] *all* the loss his actions clearly indicate he planned.").

Likewise, the First Circuit, in an 18 U.S.C. § 2314 case involving transfer of money "knowing the same to have been stolen, converted and taken by fraud ...," held:

4

> We see no reason why the fraudulent taking required any more than Medina's deposit of the check in Medina's account, the misrepresentations, the availability of the money to him, and the requisite scienter. Popielski testified that the $365,000 was available to Medina for withdrawal on November 10, at least two days before the wire transfer to England. True, the bank could have nullified the deposit before the transfer, had it been more alert; but from November 10 onward the money was just as much available to Medina as if it were cash stored under his mattress.

*United States v. Puerta,* 38 F.3d 34 (1st Cir.1994), *cert denied,* 514 U.S. 1084, 115 S.Ct. 1797, 131 L.Ed.2d 724 (1995).

The bank fraud crime having been completed upon the deposit to Gregg's account, there was sufficient evidence to support the conviction for the separate money laundering crimes when the money was withdrawn.

### 3. Enhancement of Sentence for Obstructing Justice

The district court enhanced Gregg's sentence two levels for obstruction of justice on the finding that Gregg testified untruthfully about the endorsements at trial. *See* U.S.S.G. § 3C1.1 (increase offense level by two levels "[i]f defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense ...").

Gregg contends the court erred in finding that his false testimony was *willful* rather than the result of confusion, mistake, or faulty memory. *See* § 3C1.1, comment. (n.1). ("[T]he court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.").

We review for clear error the district court's factual findings necessary for an obstruction of justice enhancement based on perjury. *See United States v. Lewis,* 115 F.3d 1531, 1538 (1997), *cert. denied,* --- U.S. ----, 118 S.Ct. 733, 139 L.Ed.2d 670 (1998).

The district court found that Gregg's trial testimony was "opposed to" the bank manager's testimony, and that it was unbelievable and "incredible" that Gregg would be told he did not have to get the endorsements of the other payees who had a mortgage or ownership interest in the property. We accord great deference to the district court's credibility determinations. *See Lewis,* 115 F.3d at 1538. The court's finding

5

is supported by the record, which reflects that although Gregg testified that he believed that he did not need the endorsements of all payees after his meeting with the bank manager, that testimony is contradicted by other witness testimony. The bank manger testified that he told Gregg to get endorsements and signature guarantees for all payees. An FBI agent testified that Gregg told him that the bank manager advised him to get all payees' endorsements. Gregg's argument that this court should distinguish between what Gregg "understood" following his meeting with the bank manager and what the bank manager told him is disingenuous. Accordingly, the court's finding that an enhancement was warranted was not clear error.

We note also that because defendant failed to request more detailed findings of perjury at sentencing, "[i]t is too late now to complain in this court." *United States v. Geffrard,* 87 F.3d 448, 453 (11th Cir.), *cert denied,* 519 U.S. 985, 117 S.Ct. 442, 136 L.Ed.2d 339 (1996).

*4. Restitution and the Ability to Pay*

Gregg argues that the district court abused its discretion and violated his Fifth Amendment right to due process by ordering him to pay $156,029.51 in restitution without considering his financial situation and ability to pay.

At sentencing, the district court announced that the amount of restitution being suggested was $156,029.51, rather than the $248,000.00 amount of SunTrust Bank's judgment against Gregg, and asked Gregg's lawyer if he wished to be heard on the issue. Gregg's lawyer responded, "Judge, I would agree that the one fifty-six amount is the appropriate amount." Gregg did not object generally to the award of restitution, either.

By expressly agreeing to the amount of restitution, Gregg waived any right to contest the amount of restitution ordered. *See United States v. Schrimsher,* 58 F.3d 608, 610 (11th Cir.1995) (defendant who conceded at sentencing that court could order restitution in a specified amount "waived the point by inviting the court to order the restitution he now contests").

AFFIRMED.

6