[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-17104
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 8, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-14024-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALBERT LEE RIGGINS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 8, 2009)

Before BIRCH, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendant-Appellant Albert Lee Riggins was indicted for possessing more

than 5 grams of crack cocaine ("crack") with intent to distribute, in violation of 21 U.S.C. § 841(a)(1)(B)(iii). Following a two-day jury trial, the jury returned a special verdict finding that Riggins was guilty of possessing <u>less</u> than 5 grams of crack with intent to distribute. The district court sentenced Riggins to 51-months' imprisonment. Riggins appeals the procedural and substantive reasonableness of this sentence.

## I. Facts

On February 1, 2008, Detective Steve Kim of the Port St. Lucie, Florida, Police Department gave an informant, Jason, $150 to purchase cocaine. Jason was monitored with a listening device as he entered Riggins' residence and emerged approximately two and one-half minutes later with .7 grams of crack.[1] Jason told Kim that more crack was inside the residence. Based on this evidence, a search warrant was obtained, Riggins' home was searched, and the police recovered an additional 5.7 grams of crack, the $150 that was originally given to Jason, and a razor blade. Riggins was indicted for possessing with an intent to distribute more than 5 grams of crack. The case proceeded to trial.

At trial, in addition to the foregoing evidence, the following evidence was

---

[1] The audiotape malfunctioned at times and thus only portions of the drug transaction were documented.

presented: following the search and after Riggins waived his Miranda[2] rights, Kim interviewed Riggins. Kim testified that Riggins admitted that the crack inside the residence was his and that he had been selling crack for the past three months in order to support his family. Drug Enforcement Administration ("DEA") Agent Michael Barbercheck, who de-briefed Riggins a few months after his arrest, testified that Riggins told him at the de-briefing that he sold drugs and that he had purchased as much as 14 grams of crack for $500 in the past from an individual named "Pookie." DEA Agent Nicolas Kent testified that one-tenth of a gram of crack was the normal dose an individual would use in a single sitting, that the 6.4 grams possessed by Riggins therefore constituted approximately 64 doses of the drug, and that such doses normally sell for $10 to $20 each.

Riggins, testifying on his own behalf, stated that Jason had asked him for drugs about eight times and, although Riggins told Jason that he did not use crack anymore, Jason nonetheless continued to pester him for drugs. Riggins admitted that he sold crack to Jason on the day in question, but claimed that he only did so because he "got tired of [Jason] aggravating [him]." Riggins contended that he contacted Pookie, arranged to purchase $150 worth of crack, Pookie dropped off a

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

wafer of crack at Riggins' residence,[3] Riggins saturated the drugs with water to increase their weight, and then Riggins called Jason to tell him to come get the drugs. Riggins claimed that he broke off some of the crack, intending to keep it for personal use, and then gave the rest to Jason in exchange for the $150. Riggins testified that after Jason left, he noticed that Jason had left behind some of the drugs that he purchased, but Riggins "picked up the remaining drugs that he left . . . [, assuming that] he'll be back."

During the course of his testimony, Riggins repeatedly claimed that he was not a drug dealer, but rather a drug addict. The government questioned the truth of Riggins' claim that he was a drug addict, noting that he had been on supervised release in the years leading up to his arrest, but had not failed any of his random urinalysis tests. Riggins replied that it was "easy" to "dodge" these tests because cocaine only remains in one's system for 72 hours. He stated that "[a] lot of times" he postponed test dates until the drugs were out of his system.

In its closing, the defense argued that Riggins had been entrapped. Defense counsel contended that Riggins was a drug addict who had been induced by the government into selling drugs to Jason. The jury subsequently convicted Riggins of possessing less than 5 grams of crack with intent to distribute.

---

[3] Riggins testified that he did not have the money for the drugs, so Pookie advanced him the crack, with the understanding that Riggins would pay the $150 once he sold the drugs.

The probation officer prepared a presentence investigation report ("PSI"). The PSI held Riggins accountable for 6.4 grams of crack, pursuant to U.S.S.G. § 1B1.3, which yielded a base offense level of 24. See U.S.S.G. § 2D1.1(a)(3). When applied to Riggins' criminal history category of IV, this produced a guideline range of 77 to 96 months' imprisonment. Riggins objected that his guideline sentence should not have been based on 6.4 grams of crack because the jury explicitly found that Riggins intended to distribute less that 5 grams of crack, and thus the jury must have believed that the unsold crack was for personal use. Riggins argued that because only $150 was recovered from Riggins' residence and Kent testified that the street value of .1 grams of crack is at least $10, his guideline range should have been based on 1.5 grams or less of crack. The government replied that Riggins should be sentenced based on the entire amount recovered, 6.4 grams, and that he should also receive a two-level obstruction of justice enhancement for offering false testimony at trial.

At sentencing, the district court stated that it did "not want to speculate on this issue" of how much crack Riggins intended to sell, and thus found that the base offense level should be based on 1.5 grams of crack. Riggins' probation officer then took the stand and testified that Riggins was drug tested 31 times, and on 29 of those occasions he did so on the same day he was instructed to report for

testing. On one occasion he took the test a day late and on another occasion he took it four days late. His test results were always negative for illegal drugs.

Riggins took the stand to address the inconsistency between the probation officer's testimony and Riggins' prior testimony that he rescheduled his drug tests "[a] lot of times." Riggins testified that he rescheduled urinalysis tests "on five or six occasions" and that, additionally, he sometimes bought specialty products that made him urinate more often, to thereby "flush [his] system out."

The district court ultimately found that Riggins had committed perjury, and thus assessed a two-level obstruction of justice enhancement. With the reduced base offense level and obstruction of justice enhancement, Riggins' total offense level was 18. An offense level of 18 and a criminal history category of IV yielded a guideline range of 41-51 months' imprisonment. Riggins asked the court to consider, in light of United States v. Kimbrough, 552 U.S. 85 (2007), the disparity between sentences for powder cocaine and crack cocaine. Riggins argued that had he sold the same quantity of powder cocaine, his guideline sentence would have been 27-33 months, and such a sentence would have been sufficient to adequately punish him.

Towards the conclusion of the sentencing hearing, Riggins apologized to the court and closed by stating, "I'm not a drug dealer." The court then engaged in a

6

brief discussion with Riggins, in which the court said, "if you sell drugs to pay your rent, you're a drug dealer." Riggins responded that he was not a drug dealer, that he was behind in his rent payments, and thus the evidence indicated that he was not a drug dealer because the fruits of an illicit business would have provided him with the means to pay his rent.

The court ultimately sentenced Riggins to 51 months' imprisonment, noting that defense counsel's argument as to "the disparity between crack cocaine and powder cocaine in determining an appropriate sentence was a convincing one until I heard your client tell me that he wasn't selling drugs . . . . And that's why he got the maximum sentence."

Riggins now appeals, arguing that his sentence is: (1) procedurally unreasonable because the district court misapplied the obstruction of justice enhancement and failed to consider the sentencing factors found in 18 U.S.C. § 3553(a); and (2) substantively unreasonable because a more lenient sentence would have been appropriate to punish Riggins for his unlawful conduct.

## II. Discussion

When reviewing the reasonableness of a sentence, this court conducts a 2-step inquiry:

> first, the appellate court must ensure that the district court committed no significant procedural error, such as failing to calculate (or

7

improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.

United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008) (quoting Gall v. United States, 128 S. Ct. 586, 597 (2007)). If the district court did not procedurally err, this court reviews the substantive reasonableness of the sentence for abuse of discretion, based on the "totality of the circumstances." United States v. Beckles, 565 F.3d 832, 845 (11th Cir. 2009).

A. Procedural Reasonableness

Riggins contends that his sentence was procedurally unreasonable because there was insufficient evidence from which to conclude that he proffered false testimony and, even if he did, his false statement was not material. Thus, he argues that the district court erroneously applied a two-point obstruction of justice enhancement, which resulted in an improperly calculated guideline sentence. Next, Riggins asserts that the district court did not adequately and properly address the § 3553(a) factors. Riggins argues that the district court placed an excessive amount of emphasis on Riggins' perjury in assessing an appropriate sentence within the guidelines range, even after the court had already used the perjury to increase Riggins' criminal history category. Therefore, even though the district court

8

purported to find the Kimbrough argument convincing, it did an "about face" and did not consider Kimbrough or any other factors aside from Riggins' perjury when it imposed the sentence.

The party challenging the reasonableness of a sentence "bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." A district court need only acknowledge that it has considered the § 3553(a) factors; it need not explicitly discuss each of them. United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). A lengthy discussion is not required in the typical case, so long as the district court "set[s] forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356 (2007). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007) (quotation omitted). "[A] district court's unjustified reliance on any one Section 3553(a) factor may be a symptom of an unreasonable sentence." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008). Nevertheless, this court "will defer to the district court's judgment regarding the weight given to the § 3553(a) factors unless the district court has made a clear error of judgment." United States v. Gonzalez, 550 F.3d

9

1319, 1324 (11th Cir. 2008) (quotation omitted).

A defendant may obstruct justice by committing perjury. See U.S.S.G. § 3C1.1 cmt. n.4(b). "We review for clear error the district court's factual findings necessary for an obstruction of justice enhancement based on perjury." United States v. Gregg, 179 F.3d 1312, 1316 (11th Cir. 1999) (citation omitted). The Supreme Court has defined perjury as "false testimony concerning a material matter with the willful intent to provide false testimony." United States v. Dunnigan, 507 U.S. 87, 94 (1993). A "material" statement is one that "if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 cmt. n.6.

Here, the district court did not err by finding that Riggins willfully provided false testimony. Riggins testified that he was drug addict, but had avoided testing positive for drugs "[a] lot of times" or "five or six times" by rescheduling urinalysis tests. Other evidence presented at trial and sentencing, however, indicated that Riggins submitted urine samples on the same day that they were requested 29 times, and that on only two occasions did he submit the samples late. Moreover, officers testified that after his arrest, Riggins admitted that he had been selling drugs for the past three months to support his family. The district court was entitled to rely on this evidence in concluding that Riggins provided false

testimony.

Also, Riggins' false testimony was material because, if believed, it influenced or affected the issue under determination at trial. At trial, Riggins did not deny selling some quantity of crack to Jason, but rather argued that some of the crack found in his residence was for personal use. The jury apparently believed this statement because it held Riggins liable for possessing less than five grams of crack with intent to distribute, despite the fact that more than five grams of crack was found in Riggins' residence. If Riggins were a crack addict, this fact would lend credence to his claim that some of the crack was for personal use. Accordingly, testimony regarding this issue was material to his innocence or guilt. Thus, the district court did not err by assessing an obstruction of justice enhancement for Riggins' perjured testimony.

Finally, the district court adequately considered the § 3553(a) factors. The court explicitly stated that it had considered the statements of the parties, PSI, and sentencing factors in calculating Riggins' sentence. The court properly noted Riggins' argument as to crack and powder cocaine sentencing disparities, but was not required to adopt the more-lenient powder cocaine guidelines range. The Supreme Court in Kimbrough merely held that it would not be an abuse of discretion for a court to consider the crack and powder cocaine sentencing

11

disparity– not that a court <u>must</u> adopt a lower guideline sentencing range in crack cases. <u>Kimbrough</u>, 552 U.S. at 574. We thus hold that Riggins' sentence was not procedurally unreasonable.

B. Substantive Reasonableness

Riggins notes in passing at several points in his brief, without explanation, that his sentence was unreasonable because a more lenient sentence would constitute adequate punishment for his crimes and would meet the goals specified in § 3553(a). Even though a sentence is not <u>per se</u> reasonable by virtue of residing within the guidelines range, "there is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." <u>United States v. Talley</u>, 431 F.3d 784, 788 (11th Cir. 2005). The party challenging the reasonableness of the sentence bears the burden of establishing that the sentence is unreasonable in light of both the record and the § 3553(a) factors. <u>Id.</u> Because Riggins has not provided any evidence to meet his burden, we conclude that his sentence was substantively reasonable.

### III. Conclusion

For the reasons set forth, we **AFFIRM** Riggins' sentence of 51 months' imprisonment.