**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Darryl BURKE, a.k.a. David Middleton, a.k.a. James Duncan, a.k.a. Donald Brown, a.k.a. Dr. Jeffrey Burke, Vicki Garland, a.k.a. Vickie Garland, a.k.a. Felicia Middleton, Defendants–Appellants.**

**No. 14–13758
Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

March 10, 2016.

Madeleine R. Shirley, Evelyn Baltoda-no–Sheehan, Jerrob Duffy, Wifredo A. Ferrer, Carol Herman, Kathleen Mary Salyer, Emily M. Smachetti, U.S. Attorney's Office, Miami, FL, for Plaintiff–Appellee.

Jennifer Daley, Amlong & Amlong, PA, Fort Lauderdale, FL, Michael Caruso, Federal Public Defender, Federal Public Defender's Office, Miami, FL, Timothy Cone, Federal Public Defender's Office, Fort Pierce, FL, for Defendants–Appellants.

Before TJOFLAT, WILSON and ROSENBAUM, Circuit Judges.

PER CURIAM:

Darryl Burke and Vicki Garland, his wife, appeal their convictions for conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 1349, and bank fraud, in violation of 18 U.S.C. § 1344. Burke also appeals the prison sentences received, totaling 360 months, for his convictions.[1] Burke and Garland challenge their convictions on the ground that the district court abused its discretion in refus-

---

1. The district court sentenced Burke to concurrent prison terms of 360 months. Garland was sentenced to concurrent prison terms of 180 months. Both forfeited $7,633,116 to the United States.

ing to instruct the jury that it could take into account the "market conditions" at the time they committed the offenses in determining whether they had made "material" misrepresentations to lenders. Burke also contends that the court abused its discretion under Federal Rule of Evidence 404(b) in admitting evidence of his prior conviction for fraud. He challenges his total sentence on the ground that the court, in applying the Sentencing Guidelines, clearly erred in finding that he was responsible for a loss amount of between $7,000,000 and $20,000,000. After a careful review of the record and consideration of the parties' briefs, we affirm.

## I.

Appellants' convictions grew out of an extensive mortgage-fraud scheme they and others perpetrated in South Florida from 2006 to October 2010. Briefly stated, appellants, and others involved in the scheme, recruited individuals seeking to purchase a home and assisted them in completing mortgage loan applications. These applications contained material representations that were false, and appellants knew that. The applications grossly overstated the borrower's salary and assets, or provided a false employment history, or were accompanied by fraudulently altered or wholly fabricated pay stubs, W–2 forms, and bank statements. In addition to assisting potential home buyers prepare fraudulent loan applications, appellants used fraudulent applications to obtain mortgage loans for themselves. They did so by using aliases, so their real names wouldn't appear on the title to the property or other loan documents. Appellants were very successful. Lenders relying on the fraudulent applications granted the mortgage loans applied for. With this description of appellants' fraudulent scheme in hand, we consider their challenge to the district court's jury instructions and, then, to Burke's Rule 404(b) argument.

## II.

### A.

■ Burke and Garland argue that the district court abused its discretion in refusing to instruct the jury that the jury must acquit them if it found that the "market conditions" at the time of the offenses were such that the misstatements in the applications for mortgage loans regarding, for example, the buyer's income and employment situation were immaterial.

We review an argument that the district court wrongfully denied an instruction for abuse of discretion. *United States v. Eckhardt,* 466 F.3d 938, 947 (11th Cir.2006). "The district court's refusal to incorporate a requested jury instruction will be reversed only if the proffered instruction was substantially correct, the requested instruction was not addressed in charges actually given, and failure to give the instruction seriously impaired the defendant's ability to present an effective defense." *United States v. Starrett,* 55 F.3d 1525, 1551 (11th Cir.1995) (citation and internal quotations omitted).

"As long as there is some basis in the evidence and legal support, the jury should be instructed on a theory of the defense." *United States v. Zlatogur,* 271 F.3d 1025, 1030 (11th Cir.2001). A more specific instruction on a "theory of the defense," however, is not warranted when the jury charge that was given adequately covered the substance of the requested instruction. *See United States v. Jones,* 933 F.2d 1541, 1544–45 (11th Cir.1991) (holding that the district court's refusal to give a jury instruction relating to the defendant's "theory of defense" that the government's witnesses lied was not error when the court "repeatedly advised the jury that it did not

have to accept all the testimony before it as being true and accurate, and that certain testimony should be considered with caution and weighed with great care").

To obtain a conviction for bank fraud, the government must prove that the defendant made a "material" false representation. *United States v. Gregg*, 179 F.3d 1312, 1314 (11th Cir.1999). A false statement is generally material "if it has a natural tendency to influence, or is capable of influencing, the decisionmaking body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 16, 119 S.Ct. 1827, 1837, 144 L.Ed.2d 35 (1999) (quotation omitted). Reliance on the false statement, however, is not necessary to make it material. *Gregg*, 179 F.3d at 1315. Rather, the statement need only have been intended to exert "actual influence" and have the "capacity" to do so. *Id.* In *Gregg*, we affirmed a conviction for bank fraud where the defendant falsely told a bank teller that a check without all required endorsements had been approved by the bank manager. *Id.* at 1314–15. The check was deposited after the bank manager mistakenly assumed that all the endorsements were present. *Id.* We then rejected the defendant's argument that the statements were immaterial because the bank did not rely on his false statement in depositing the check. *Id.*

We find no abuse of discretion in the district court's refusal to give appellant's request for a "market conditions" theory-of-defense jury instruction, because their theory, which centered on materiality, was substantially covered by other instructions defining materiality. Moreover, it was not supported by the law, which indicates that reliance on a false statement is not necessary to make it material.

## B.

▪ Burke asserts that the district court abused its discretion in admitting evidence of his prior conviction for fraud because the conviction was too remote in time and not sufficiently similar to the instant offense to outweigh the substantial prejudice he would face from the jury's equating the prior conviction to the instant charge. Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). However, this evidence may be admissible for another purpose, such as to demonstrate motive, intent, absence of mistake, or lack of accident. Fed.R.Evid. 404(b)(2); *United States v. Sanders*, 668 F.3d 1298, 1314 (11th Cir.2012).

We use a three-part test to evaluate the admissibility of Rule 404(b) evidence. *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir.1995) (citing *United States v. Miller*, 959 F.2d 1535 (11th Cir.1992) (*en banc*)). "First, the evidence must be relevant to an issue other than the defendant's character; [s]econd, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; [t]hird, the probative value of the evidence must not be substantially outweighed by its undue prejudice." *Id.*

The district court did not abuse its discretion in admitting Burke's prior conviction for mortgage fraud; the evidence was plainly probative of his intent and was not substantially outweighed by undue prejudice.

## III.

Burke argues that, in determining the total offense level under the Sentencing Guidelines, the district court clearly erred in calculating a loss amount of between $7,000,000 and $20,000,000 and by subse-

quently enhancing his base offense level (under U.S.S.G. § 2B1.1) by 20 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(K). We review for clear error a district court's determination of a loss amount for sentencing purposes. *United States v. Medina*, 485 F.3d 1291, 1303 (11th Cir.2007).

Burke asserts four errors in the court's calculation: (1) the $68,900 loss on the 20533 Northwest 13th Avenue property should not have been counted because he attempted to frustrate the closing of the loan; thus, it was not foreseeable to him that the closing would occur; (2) losses, totaling an estimated sum of $795,443, stemming from loans involving a buyer named "David Middleton" should not have been attributable to him because the government failed to prove that he executed any of the loan documents using that name as an alias; (3) two of the fraudulently obtained loans to Garland were satisfied, such that no loss to the lenders occurred; and (4) the district court erred by using a municipal tax appraiser's valuations of some of the properties, rather than their market value.

Section 2B1.1(b)(1)(K) of the Sentencing Guidelines specifies a 20 level increase to a defendant's base offense level "if the loss exceeded [m]ore than $7,000,000" and was less than $20,000,000. U.S.S.G. § 2B1.1(b)(1)(K). The district court must "only make a reasonable estimate of the loss," because the amount of loss caused by a defendant's fraud is often difficult to determine accurately. *Id.*, comment. (n.3(C)); *Medina*, 485 F.3d at 1304. The court "is in a unique position to assess the evidence and estimate the loss based upon that evidence" and is thus entitled "appropriate deference." U.S.S.G. § 2B1.1, comment. (n.3(A)(ii)). Nevertheless, the court may not speculate about the existence of a fact that would permit a more severe guidelines sentence. *Medina*, 485 F.3d at

1304. The amount of loss must, therefore, be proven by a preponderance of the evidence with reliable evidence. *Id.*

For purposes of § 2B1.1(b)(1), "loss is the greater of actual or intended loss." U.S.S.G. § 2B1.1, comment. (n.3(A)). "Actual loss" is "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.*, comment. (n.3(A)(i)). "Intended loss" is "pecuniary harm that was intended to result from the offense," and "includes intended pecuniary harm that would have been impossible or unlikely to occur." *Id.*, comment. (n.3(A)(ii)). Intended loss also includes pecuniary harm that was unlikely to occur. *Id.* "Reasonably foreseeable pecuniary harm" is "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id.*, comment. (n.3(A)(iv)).

The fair market value of property returned to the victim "before the offense was detected" may be credited against a loss. *Id.*, comment. (n.3(E)(i)). The time of detection is the earlier of when the offense was discovered by a victim or government agency or of the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency. *Id.*

However, in a mortgage fraud case, the court should credit the fair market value, at the time of conviction, of undisposed collateral. *Id.*, comment. (n.3(E)(iii)) Furthermore, a "rebuttable presumption that the most recent tax assessment value of the collateral is a reasonable estimate of the fair market value" exists. *Id.* In determining the reasonableness of such an assessment, a court may consider, among other factors, the recency of a tax assessment and the extent to which the jurisdiction's tax assessment practices reflect factors not relevant to fair market value. *Id.*

In addition to charged conduct, proper calculation of the Guidelines requires consideration of all relevant conduct. *U.S. v. Rodriguez*, 751 F.3d 1244, 1256 (11th Cir. 2014). Relevant conduct includes "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

■ We find no clear error in the district court's calculation of the losses attributable to Burke. Sufficient evidence supported a finding that he was "David Middleton"; he did not sufficiently frustrate the closing of one of the fraudulent loans; the use of a municipal tax appraiser's property value assessments was appropriate; and sufficient evidence supported the government's assertions on the amount of losses on the loans that were satisfied.

AFFIRMED.