[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14051
Non-Argument Calendar
_____

D.C. Docket No. 6:17-cr-00049-RBD-GJK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIANO ALMODOVAR,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 6, 2018)

Before FAY, HULL, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Mariano Almodovar appeals his conviction and sentence for attempting to persuade, induce, or entice a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b).  We affirm.

## I. BACKGROUND

In January 2017, FBI Special Agent Kevin Kaufman, "posing as a bad dad with two daughters," posted an ad on Craigslist as part of an investigation by the Violent Crimes Against Children Task Force.  The title of the ad was "Family Time is Fun Time - w4m."[1]  The ad read: "Family time is always fun when others are around.  Looking for like minded individuals who enjoy the taboo family lifestyle.  Must be discreet and non judgmental!!!"[2]

Almodovar responded to the ad via email about 37 minutes after it was posted, and asked, "What kind of fun you interested in?"  He attached a shirtless picture of himself to the message.  Agent Kaufman responded, "Dad with 9 and 11[-year-old] daughters looking for new experiences."  Almodovar asked Agent Kaufman if he had any pictures of his daughters that he could send; Agent Kaufman responded, "If you have to ask maybe this is not for you."  Almodovar answered, "I think it is . . . . Have you done this before?  I've been on webcam

---

[1] "W4m" stands for "woman for man."

[2] At trial, Agent Kaufman explained that he commonly used the phrase "family time is fun time" in these types of ads, because, based on his training and experience, referring to family would bring out people interested in incestuous relationships and sex with children.

sites like OMEGLE hoping to see something like this."[3]  Agent Kaufman replied, "That's hot.  We have done it once or twice.  Lol.  Love meeting new people."

Almodovar asked him several times if he had any pictures of the girls. Agent Kaufman sent a picture of a law-enforcement officer when she was 12 years old and a message stating "[t]hat's my 11-year-old."  Almodovar responded, "She's beautiful," and then, "That smile too.  Any full body of her?"  Although Agent Kaufman explained to him that he would not send or share any more pictures, Almodovar persisted in asking for more pictures of the girls.  Almodovar sent a message that read, "Ah okay.  I'd like to see more like the one you sent me. Obviously can't be in person.  That pic u sent got me hot."  Almodovar then asked Agent Kaufman whether the 11-year-old wore thongs yet.  Agent Kaufman responded, "She wants to.  Mom won't let her."  Almodovar replied, "Nice," and "I bet it looks amazing.  Lickable."

Almodovar continued to indicate to Agent Kaufman that he wanted to see pictures of the girls.  Agent Kaufman explained, "I'm interested in new experiences for my daughter not interested in sharing pics."  Almodovar responded, "Can you give me an example of a new experience for her?  How can I be part of that?"  Agent Kaufman said, "As I said before, if you have to ask maybe

---

[3] Agent Kaufman testified that OMEGLE was a web application that allows users to view webcams; minors go on it and do sexual acts to try to engage people for money.

3

this ad is not for you.  Sometimes this lifestyle is not accepted and I understand your hesitation."  Almodovar brought up meeting the girls for the first time when he replied, "I want to be part of it.  Does she want me to be?  When can we meet?"  Almodovar also asked, "Has the 11 yr old done anything?  With a man like me?"

Almodovar then asked him to move the conversation to *WhatsApp*, an application in which the message content would be encrypted and more secure.  Almodovar then sent a follow-up e-mail: "My imagination is going crazy with what I want to do: kiss, lick, suck."  Agent Kaufman asked whether Almodovar was referring to the 9- or 11-year-old girl; Almodovar responded, "Either or both."  Agent Kaufman asked if Almodovar would be willing to follow the rules, which were: "No rough stuff.  No bareback.  I get to watch.  When they say enough.  Enough means enough."  Almodovar responded that he could follow those rules and asked when and where "this [could] happen."  Agent Kaufman told Almodovar that he wanted to meet up with him first and then, if he was "cool," he would take him back to his place to meet his daughters.

Almodovar asked, "Have they done anything like this before?  How do they react?  And yes, what all can be done?"  Almodovar again requested that they message through *WhatsApp* and they began communicated through it.  Almodovar said that he chose the application "because of its protection."

4

Almodovar proposed that they meet at a certain location. Again, Agent Kaufman stated that if they met, and he thought Almodovar was "cool," then they would go to his place on the same day and he would introduce him to his 9- or 11-year-old daughter. He told Almodovar to select a day and which daughter he wanted to meet, and he would keep that daughter out of school. Almodovar responded, "Tuesday morning, 11-year-old." Agent Kaufman asked what the girl should expect and what she should wear. Almodovar responded, "Oral. Shorts I guess."[4] Agent Kaufman then asked Almodovar, "Oral both ways or her from you or you from her?" Almodovar responded, "Both ways."

Almodovar indicated that he wanted proof that Agent Kaufman was sincere; Agent Kaufman said he could speak to the girl on the phone. Almodovar called and a female detective pretended to be the 11-year-old girl on the phone. After the phone call, Almodovar said, "She sounds beautiful," and that he was heading to the predetermined meeting place. They agreed on a time to meet. At the agreed-upon time, Almodovar parked next to the vehicle matching the description Agent Kaufman had given him. When he opened his car door to get out, he was arrested. Law enforcement seized Almodovar's cell phone as a result of his arrest. Agent

---

[4] Agent Kaufman understood this to mean that Almodovar wanted to engage the 11-year-old girl in oral sex.

Kaufman searched the phone and could not find the e-mails that he had exchanged with Almodovar because they had been deleted from the phone.[5]

Special Agent Rodney Hyre and Agent Kaufman interviewed Almodovar after he was arrested. Almodovar told them that he had been e-mailing with a person he met through Craigslist for about two weeks. Almodovar said that the person was the father of a 9- and 11 year-old child and that the father molested the children. Almodovar admitted that he had asked for clothed and unclothed pictures of the girls and that he had made sexual comments about what he wanted to do to them. He told them that he was addicted to pornography and that he needed help. Almodovar stated that he showed up "to make sure that [the dad] was legitimate and to tell the dad that the dad was f**ked up and to look at the dad and say, really?" Almodovar said that he did not tell anybody about the dad because he knew that the conversation could get him in trouble.

A federal grand jury charged Almodovar with attempting to persuade, induce, or entice a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b). Almodovar pled not guilty and proceeded to trial. After Agents Kaufman and Hyre testified, the government rested its case. Almodovar moved for

---

[5] On cross-examination, Agent Kaufman testified that at first it seemed that Almodovar was merely looking for child pornography. He testified that Almodovar did not bring condoms or other prophylactics when he met with Agent Kaufman. He stated that there was no evidence that Almodovar had ever had any inappropriate physical contact with a child.

judgment of acquittal, arguing that the government had not proved the elements of the offense. The district court denied the motion.

Almodovar testified at trial that he had responded to the Craigslist ad because he wanted to know if it was real or if it was somebody just playing a "very sick game." He stated that he did not engage in the conversation with Agent Kaufman for the purpose of involving himself in sexual activity with a minor; he was trying to gather evidence against the dad because he "wanted to get him." He testified that he repeatedly asked Agent Kaufman for pictures because he wanted something concrete against him. Almodovar said that he wanted to switch the conversation to *WhatsApp* because it would allow him to get Agent Kaufman's phone number, see his area code, and know where he was calling from. He stated that he never had intended to engage in sexual activity with either the 9- or 11-year-old. After Almodovar's testimony, the defense rested. Almodovar renewed his motion for judgment of acquittal; the district court denied it. The jury found Almodovar guilty.

A probation officer prepared a presentence investigation report ("PSI"). The probation officer calculated a base offense level of 28 under U.S.S.G. § 2G1.3(a)(3), applied a two-level increase under § 2G1.3(b)(3)(A) because the offense involved the use of a computer, and applied an eight-level increase under § 2G1.3(b)(5) because the offense involved a child under the age of 12. The total

offense level was 38 and Almodovar's criminal history category was I.  Based on a total offense level of 38 and a criminal history score of I, the Guidelines imprisonment range was 235 to 293 months.  The minimum statutory term of imprisonment for the offense was 10 years and the maximum term was life.

The government objected, arguing that Almodovar should receive a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice.  It asserted that Almodovar's statements at trial that he was acting as a "vigilante" and conducting his own investigation into the sexual exploitation of children were materially false and contradicted by the evidence and the jury's verdict.  Almodovar did not object to the PSI.

The district court found that Almodovar's testimony regarding his motivation to engage in online communications with Agent Kaufman was false and it was material because it was designed to mislead the jury regarding his intent in communicating with Agent Kaufman.  Accordingly, the court applied the two-level enhancement under § 3C1.1.  The court adopted the calculation of the Guidelines and the facts in the PSI, with the addition of the obstruction-of-justice enhancement.  The court stated that the total offense level was 40 and the Guidelines range was 292 to 365 months of imprisonment.

The court noted that it had considered the PSI, 18 U.S.C. §§ 3551 and 3553, and the arguments of the parties.  It stated that it was granting Almodovar a four-

8

level downward variance and that it would sentence him to a bottom-of-the-Guidelines-range sentence for an offense level of 36. The court also stated that the Guidelines range was much greater than necessary to achieve the statutory purposes of sentencing. The court considered Almodovar's stable employment, his prior military service, his lack of criminal history, that the offense occurred over a brief period of time, and the need to avoid sentencing disparities. The court sentenced Almodovar to 188 months of imprisonment, followed by 10 years of supervised release. Because it was greater than the minimum mandatory sentence, Almodovar objected to the sentence as substantively unreasonable.

On appeal, Almodovar argues that the district court erred when it denied his motion for judgment of acquittal because there was insufficient evidence to support his conviction. He also argues that the district court erred when it imposed a two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, because the court did not make adequate factual findings of perjury and its factual findings were clearly erroneous.

## II. DISCUSSION

### A. Sufficiency of the Evidence

We review a district court's denial of a motion for judgment of acquittal on sufficiency of the evidence grounds de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and

credibility choices in the government's favor. *United States v. Capers*, 708 F.3d 1286, 1296 (11th Cir. 2013). The evidence need not exclude every reasonable hypothesis but that of guilt, "and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." *Id.* at 1297 (quotation omitted). We will not overturn a jury's verdict if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt. *Id.* If a defendant chooses to testify on his own behalf, any statements he makes, "if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt." *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995).

Section 2422(b) imposes criminal penalties on whoever, using interstate commerce, "knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so." 18 U.S.C. § 2422(b). A conviction for attempt under § 2422(b) requires that the defendant (1) had the specific intent to persuade, induce, entice, or coerce a minor to engage in criminal sexual activity, and (2) took a substantial step toward the commission of the underlying crime. *United States v. Yost*, 479 F.3d 815, 819 (11th Cir. 2007). A defendant takes a substantial step when his "objective acts

10

mark his conduct as criminal and, as a whole, strongly corroborate the required culpability." *Id.* (quotation omitted).

In *United States v. Lee*, 603 F.3d 904 (11th Cir. 2010), we did not accept the defendant's argument that the government proved only that he engaged in "explicit sexual banter" and that "speech without conduct" did not establish the crime of attempt to entice a minor to engage in illegal sexual conduct. *Id.* at 914-15. We concluded that the defendant had the requisite intent, where he encouraged a law-enforcement agent—posing as a mother—to share photographs of his penis with her daughters, asked how they responded to the photographs, promised not to harm the girls during intercourse, and suggested meeting the girls prior to any sexual encounter. *Id.* at 915. We also concluded that the defendant took a substantial step toward commission of the offense because he discussed in detail with the mother how he wanted to complete the act and sent graphic photographs to the girls, even though he never made firm travel plans to meet them. *Id.*

Here, there was sufficient evidence for a reasonable jury to find beyond a reasonable doubt that he had the specific intent to entice a minor to engage in criminal sexual activity. *Yost*, 479 F.3d at 819. Almodovar initiated communication with the "father" by responding to the Craigslist ad, proposed that they meet in person, specifically discussed sexual activity involving the girls when he stated that he could follow the father's rules regarding sexual contact, asked

how the girls reacted and what type of sexual activity could be done, spoke with the notional daughter on the phone to ensure that the father was legitimate, and traveled to the meeting place and parked next to the vehicle that he believed belonged to the father.  *See Lee*, 603 F.3d at 915.

There also was sufficient evidence for the jury to find that Almodovar took a substantial step toward causing the daughter to assent to sexual contact with him. *Yost*, 479 F.3d at 819.  Almodovar discussed in detail with the father that he wanted to engage in oral sex with the daughter, repeatedly requested that the father send him photographs, called the notional 11-year-old girl and spoke to her, and drove to the agreed-upon meeting place to meet the father and eventually to meet the daughter.  These objective acts, taken together, marked Almodovar's conduct as criminal and strongly corroborated the required culpability.  *Id.*

The evidence contradicted Almodovar's testimony that he intended to help law enforcement in a criminal investigation against the father.  The evidence showed that Almodovar encouraged the father to send pictures of his daughters, asked the father to communicate through a more secure and encrypted application, never reported the father to law enforcement or Craigslist, and deleted the e-mail communications with the father.  Further, the jury disbelieved Almodovar's testimony that he intended to help law enforcement, which may be considered as substantive evidence of his guilt.  *Brown*, 53 F.3d at 314.

12

Almodovar's argument that the government merely proved that he engaged in "explicit sexual banter," which did not establish the crime of intent, fails. In *Lee*, we did not accept a similar argument, where the defendant engaged in similar communications with a law enforcement officer, posing as a mother, about engaging in sexual acts with her daughters. 603 F.3d at 915. Moreover, unlike Lee, Almodovar made concrete plans to meet the father and his minor daughter in person. Similarly, Almodovar's argument that the evidence was insufficient because it did not exclude every hypothesis but that of guilt fails; that is not the legal standard. *Capers*, 708 F.3d at 1297. We will not overturn a jury's verdict if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt. *Id.*

Accordingly, the evidence, viewed in the light most favorable to the jury's verdict, sufficiently showed that Almodovar intended to cause a minor to consent to illegal sexual activity, and that he performed substantial steps to cause such assent. *Id.*; *Yost*, 479 F.3d at 819.

## B. Sentencing Enhancement

In reviewing the district court's imposition of the obstruction-of-justice enhancement under U.S.S.G. § 3C1.1, we review the court's factual findings for clear error and its application of those findings to the Guidelines de novo. *United States v. Doe*, 661 F.3d 550, 565 (11th Cir. 2011). We accord great deference to a

13

district court's credibility determinations when applying the obstruction of justice enhancement based on perjury. *United States v. Banks*, 347 F.3d 1266, 1269 (11th Cir. 2003).

Pursuant to § 3C1.1, a defendant's offense level is increased by two levels if the defendant "willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," such as by committing perjury. U.S.S.G. § 3C1.1 & cmt. n.4(B). Perjury occurs where a witness gives deliberately false testimony regarding a material matter, which is not caused by confusion, mistake, or faulty memory. *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993).

To apply the enhancement, the district court must make a factual finding that the defendant gave perjured testimony on a material matter. *United States v. Vallejo*, 297 F.3d 1154, 1168 (11th Cir. 2002). Although, preferably, the district court should make specific findings as to each instance of perjury by individually identifying the materially false statements, it is sufficient when the court makes "a general finding of obstruction of justice that encompasses all of the factual predicates of perjury." *Id.* (quotation omitted). If a defendant believes that the district court's findings of fact underlying a finding of perjury are inadequate, he must say so at sentencing to preserve the issue for appeal. *United States v. Gregg*, 179 F.3d 1312, 1317 (11th Cir. 1999).

14

Almodovar failed to request that the district court make more specific findings; accordingly, his argument that the district court failed to make adequate factual findings of perjury was not preserved for appeal. *See id.*  Moreover, the district court's factual finding of perjury was adequate because it encompassed the factual predicates of perjury. *Vallejo*, 297 F.3d at 1168.  The district court did not clearly err when it concluded that Almodovar's testimony that he intended to help law enforcement investigate the father was false; this testimony was contradicted by evidence that he moved the conversation to a more secure application, never reported the father, and deleted the e-mails. *Doe*, 661 F.3d at 565.  Therefore, the district court properly applied the obstruction-of-justice enhancement under § 3C1.1.

    **AFFIRMED.**