[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12707

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TYREE ARVELL MONROE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:14-cr-00007-TFM-N-1

_____

Before NEWSOM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Tyree Arvell Monroe appeals the revocation of his term of supervised released. The district court revoked his term after finding that he violated five release conditions. Monroe argues that the government presented insufficient evidence to support the district court's findings. After careful review of the arguments, we disagree. Because the district court did not abuse its discretion in revoking Monroe's supervised release, we **AFFIRM** the district court.

**I.**

Monroe and three others robbed a pawn shop. They stole jewelry, cash, and eleven firearms, then tried to flee, but the police caught them. A grand jury indicted Monroe for stealing eleven firearms from a person licensed to engage in the business of dealing firearms, in violation of 18 U.S.C. § 922(u), and for receiving, possessing, and concealing eleven firearms that he knew had been stolen, in violation of 18 U.S.C. § 922(j). Monroe pleaded guilty to the first count, and the district court, after reviewing the probation officer's recommendation, sentenced him to seventy months' imprisonment and three years' supervised release.

The district court imposed special conditions on Monroe's supervised release term. Among those conditions, Monroe had to participate in substance abuse testing and treatments, refrain from

substances, not associate with a convicted felon unless permitted by his probation officer, and not commit any crimes.

Monroe violated the terms of his release, and the district court resentenced him. The district court followed a term of imprisonment with a term of supervised release, which included the same special conditions as the first term. After serving his prison term, Monroe, again, violated the terms of that supervised release term. The district court, in turn, revoked his supervised release, and sentenced him to prison followed by an additional term of supervised release with the same special conditions. Monroe appealed that judgment to this Court, and we affirmed the district court.

While he was serving his most recent term of supervised release, police pulled Monroe over. He had allegedly finished a catering job with Michael D'Angelo Jackson—a convicted felon—and Sarah Green. He testified that he drove the car because Green was in the gas station, and the gas station owner asked him to move the car away from the gas pump. As he moved the car, the police pulled him over because a cover obstructed the license plate. After stopping the vehicle, the police officers discovered outstanding traffic warrants for Monroe and Jackson. As the police officers questioned Monroe, they noticed Jackson, sitting in the passenger seat, dump a substance onto the floorboard of the car. Jackson told the police officers that he purchased the substance from a gas station and that it was not illegal. The police officers then searched the car, finding

a plastic bag, which they suspected contained "spice"—a form of synthetic marijuana—under the driver's seat.

The police officers collected the substance and sent it for drug testing. They believed, based on their experience, that the substance was spice. They charged Monroe with possession of a controlled substance in violation of Alabama law. After Monroe's arrest, he notified his probation officer of the incident. He told her, however, that Green drove the car at the time of the arrest and that they worked for Wilton Caterer.

His probation officer discovered that Monroe no longer worked for Wilton Caterer, and that Jackson never worked for the company. Although the conditions of his supervised release required Monroe to tell the probation officer of changes in employment, he failed to tell her that he no longer worked for Wilton Caterer and had started a freelance catering business.

The probation officer petitioned the district court to revoke his term of supervised release. The probation officer asserted that Monroe violated five conditions of his supervised release term. First, Monroe associated with a convicted felon, Michael D'Angelo Jackson. Second, Monroe lied to the probation officer about his employment status and a recent arrest. Third, he possessed "spice," in violation of state law. Fourth, he failed to notify the probation officer that he lost his job. And fifth, he attempted to alter his drug test results by drinking a mixture of baking soda. If found guilty, his guidelines range was a term of imprisonment of 8 to 14 months.

The district court held a hearing on the petition. The district court heard testimony from Monroe, his prior employer, his probation officer, and the police officer who pulled him over. Monroe denied all allegations, but his testimony was inconsistent with the other witnesses' statements. After hearing the various testimonies, the district court considered the police officer's, the probation officer's, and the former employee's testimonies credible. The district court determined that Monroe's testimony was not credible.

The district court found that Monroe had violated the terms of his supervised release and sentenced Monroe to ten months of imprisonment and twelve months of supervised release. Monroe timely appealed.

## II.

The district court may revoke a term of supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). When a district court revokes a term of supervised release, we review that decision for an abuse of discretion. *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010). And we review a district court's factual findings for clear error. *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993). A clearly erroneous factual finding must leave us with a definite and firm conviction that the district court has made a mistake. *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1494 (11th Cir. 1997).

## III.

Monroe presents us two arguments. First, he challenges the sufficiency of the evidence for four of his violations. Second, he argues that the district court imposed a substantively unreasonable sentence because the government presented insufficient evidence for those four violations, leaving only one uncontested violation as the basis for his sentence.

We begin with Monroe's first argument. He contends that the government presented insufficient evidence that Monroe knowingly and constructively possessed alleged spice.

He argues that the government failed to prove that the substance—found under his seat at the time of a police search—was illegal. The government did not introduce laboratory reports that identified the substance as illegal spice. But we have not required laboratory test results to confirm the identity of a substance. *United States v. Zielie*, 734 F.2d 1447, 1456 (11th Cir. 1984), *abrogated on other grounds by United States v. Chestang*, 849 F.2d 528, 531 (11th Cir. 1988). Instead, the government "may establish the identity of a drug using circumstantial evidence." *United States v. Williams*, 865 F.3d 1328, 1344 (11th Cir. 2017). That happened here. The police officer, who found the substance, testified that "[d]ue to training and experience," he suspected that the substance was spice because of its "texture" and "sweet smell, like marijuana." The officer testified that he saw Jackson—sitting next to Monroe in the car—open a white piece of paper and dump a substance onto the car's floorboard. The police officer testified that he found a nearly identical

substance—with the same "smell," "odor," and "consistency"—under Monroe's seat. Based on these facts, we cannot say that the district court, under the preponderance of the evidence standard, clearly erred in finding that the substance was spice.

Monroe argues, alternatively, that even if the substance in the car was illegal spice, the government failed to present sufficient evidence that he constructively possessed it. To establish constructive possession, the government must prove that Monroe "knew the identity of the substance and exercised dominion and control over it." *United States v. Richardson*, 764 F.2d 1514, 1525 (11th Cir. 1985). A police officer testified that he found the substance, while searching the car, concealed under the driver's side seat. That police officer also stated that Monroe sat on that seat at the time of the police stop. Monroe testified and admitted that the car contained "all types of substances" but that "[n]one of them were illegal." The district court made a credibility determination, finding the police officer's testimony more believable than Monroe's testimony. We give "great deference to the district court's credibility determinations." *United States v. Gregg*, 179 F.3d 1312, 1216 (11th Cir. 1999). Given these credibility determinations and Monroe's control over the car at the time of the police stop, we cannot say the district court clearly erred in determining that Monroe constructively possessed the substance. *See United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989).

Second, Monroe argues that insufficient evidence supports the district court's finding that he lied to the probation officer. He

characterizes his "omission" to the probation officer about the circumstances surrounding his most recent arrest as a "negligible detail"—but we disagree. The conditions of his release required him to answer *all* inquiries from the probation officer "truthfully." The government presented sufficient evidence to demonstrate that Monroe failed to meet this condition. That evidence included the fact that Monroe initially told the probation officer that Green was driving the car at the time the police officers pulled them over. He also suggested to his probation officer that he worked with Jackson at Wilton Caterer, but the employer's testimony contradicted Monroe's. The employer informed the district court that Jackson never worked at his company. Monroe asks us to credit his testimony over other witnesses. But we are not in the best position for this task because "[c]redibility determinations are typically in the province of the fact finder." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). Based on this evidence, we find no error in the district court's determination that Monroe violated the condition to answer all the probation officer's questions truthfully.

Third, Monroe denies knowledge of Jackson's status as a three-time convicted felon. He points out that his supervised release condition does not explicitly include a *mens rea* requirement, which he argues is inconsistent with the Federal Sentencing Guidelines. *See* U.S.S.G. § 5D1.3 (prohibiting a defendant from "knowingly" interacting with a convicted felon unless he has permission from his probation officer). We decline to address this alleged inconsistency, and instead, we assume without deciding that a

violation of the condition required the government to show that Monroe knew about Jackson's felony status.

Assuming the condition required the government to prove Monroe's knowledge of Jackson's status, the facts support the district court's finding. A fact finder rarely receives direct evidence of knowledge. Instead, he may assume knowledge or intent from circumstantial evidence. *United States v. Morley*, 99 F.4th 1328, 1339 (11th Cir. 2024). When Monroe testified that he was not aware of Jackson's status, the district court determined that his testimony was not credible. Specifically, Monroe testified that Jackson was a coworker that he employed for his freelance catering jobs. But Monroe's former employer testified that Jackson never worked at the company. We have permitted fact finders to consider false statements substantive evidence of guilt. *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). We cannot say the district court clearly erred in finding that Monroe knew about Jackson's criminal history.

Monroe's employment association argument fails too. He directs us to *Arciniega v. Freeman*, where the Supreme Court rejected the argument that "the parole condition restricting association was intended to apply to incidental contacts between ex-convicts in the course of work on a legitimate job for a common employer." 404 U.S. 4, 4 (1971). We consider that case distinguishable. Here, Monroe—not a "common employer"—made the decision that ultimately led to Jackson's employment. Monroe testified that he hired Green, who, in turn, hired Jackson to assist him with

freelance catering jobs. And relatedly, to consider *Arciniega* analogous requires us to disregard the district court's credibility determinations. Monroe testified that he hired Jackson to work as a freelance caterer—but no other testimony or evidence supports that assertion. The district court, as mentioned above, determined that Monroe's testimony was not credible, and as such, the district court was free to reject his testimony.

Fourth, Monroe contends that the government presented insufficient evidence that he tried to affect his drug test results. But Monroe's argument, again, asks this Court to make a credibility determination. We decline to do so. The government presented sufficient facts for the district court judge to determine that Monroe attempted to affect his drug test results. Among other facts, the employer testified that Monroe asked him to "pick up baking soda at the grocery store." The employer testified that Monroe's job did not require the use of baking soda. The business owner suspected that the mixture might affect a drug test, but he was not sure if the mixture might also function as an antacid. Although Monroe denied drinking the substance and called the business owner's testimony "perjury," the district court did not consider his testimony credible. We defer to the district court's "determinations unless [its] understanding of the facts appears to be 'unbelievable.'" *Ramirez-Chilel*, 289 F.3d at 749 (*quoting United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985)). Here, we cannot say that the district court clearly erred in its findings because nothing in the record suggests that the employer testified to an "unbelievable" version of facts.

Because sufficient evidence supported each of these four violations, the district court did not commit clear error in its factual findings. *See* 18 U.S.C. § 3583(e)(3). Furthermore, because Monroe's argument concerning the unreasonableness of his sentence relies on the success of his first argument, we need not address it. The district court did not abuse its discretion in revoking Monroe's term of supervised release. *See Cunningham*, 607 F.3d at 1266.

## IV.

We **AFFIRM** the district court.